Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the Circuit court of the county of Charlotte, rendered on the 80th day of September 1878, convicting Susan Thornton of the murder of her husband, William Thornton, by poison, and sentencing her to he hung therefor.
The indictment was in the usual form in such cases, and contained two counts. The first was a count charging the said Susan Thornton and one Ed. Kobinson jointly with the commission of the offence, as principals in the first degree. The second charged her as principal in the first degree and Mm as accessory before the fact. On their joint arraignment in the County court, on the ■3d of March 1873, they elected to be tried in the Circuit •court of said county. Afterwards, in the Circuit court, •Susan Thornton, by counsel, moved the court to quash the second count in the indictment, which motion the court sustained ; and thereupon she pleaded not guilty, •and was tried separately. The jury found her guilty of murder in the first degree, as charged against her in the indictment. Whereupon she moved the court to set aside the verdict and grant her a new trial; which motion the court, after taking time to consider, sustained. Afterwards, to wit: in September 1873, she was again tried, and 'again found guilty of murder in the first degree, and judgment was rendered accordingly.
The record states that after reading the indictment to the jury, on the second trial, they were charged to en-quire “whether the prisoner be guilty of the murder as charged in said indictment or not guilty; and if they find her guilty of murder in the first degree, say so, and no more; but if they find that she attempted to administer poison with intent to kill or injure, she shall be confined in the penitentiary, so that such term be not *660 less than three nor more than five years; but if they find her not guilty, say so and no more; and heai’ken to the evidence.” "Whereupon the ¡irisoner, by counsel, excepted to the reading of the whole of the said indictment to the jury, and the charge given to the jury, for the reason that the second count in the said indictment was quashed on the trial of the prisoner at the last term of this court. Thereupon the court ordered the clerk to read to .the jury only the first count in said indictment, and to charge them to enquire whether the prisoner be guilty of the murder as charged in the said first count in the indictment; which was accordingly done. Whereupon the prisoner, by counsel, excepted to the second reading of said indictment and the charge to the jury.
After the second verdict was rendered, the prisoner by counsel moved the court to arrest the judgment; which motion the court overruled; and the prisoner, by counsel, excepted to the said action of the court. Then the prisoner, by counsel, moved the court for a new trial; which motion was also overruled; and the prisoner, by counsel, excepted to the action of the court in that respect also. The five exceptions aforesaid present the questions arising in this cause, which will be considered in the order in which the exceptions were taken.
The questions arising on the first and second bills of exception will be considered together. The first states that the whole indictment, including both counts, which are set out in the bill of exceptions, was read to the prisoner when she was put at the bar for trial, and the jury were charged in the words aforesaid. “And no objection having been previously made to the reading of the indictment and the charge given by the clerk, in manner and form as above stated, the prisoner’s counsel here stated that he desired to except to the-reading of the said indictment as above stated, and to the charge as above *661 given, and prayed that this, his first bill of exceptions,” might be signed and sealed by the court; which was accordingly done.
The second bill of exceptions states that after the indictment had been read, and the jury charged as spedfied in the first bill of exceptions, the indictment, including only the first count, was again read to the prisoner, and the jury were again charged as aforesaid. “And no objection having been previously made to the second reading of the indictment and the second charge to the jury, as above specified, the counsel for the prisoner here stated that he desired to except to reading of the indictment as aforesaid the second time, and the charge of the cleric as aforesaid the second time, and prayed that this his second bill of exceptions” might be signed and sealed by the court; which was accordingly done.
The whole indictment, including both counts, having, by mistake, been read to the prisoner, aud the jury charged thereupon, though the second count had previously been stricken out, it was of course proper, when the mistake was discovered, to correct it, by reading again the indictment, including the first count only, and again charging the jury thereupon. When this was done, the case stood as if the mistake had never been made. And this disposes of the first bill of exceptions, which may therefore be considered as out of the case. The main question intended to be presented by the first and second bills of exception, and the only one about which there can be any doubt, is thus stated in the petition for a writ of error in the case: “. that the chai’ge of the clerk to the jury was contrary to law, in this, that the clerk failed to charge the jury as to the different grades of homicide.” We will now proceed to consider that question.
*662 There is no law requiring the clerk to charge the j ury as to the different grades of homicide in any case. It be-to the court to instruct the jury as to the law, whenever they require instruction, or either of the par^es re(lues^ ^ given. It does not appear that they needed any in this case, or that either of the parties required any to he given. It does not appear that they did not thoroughly understand, at least so far as the case-required it, the different grades of homicide. The prisoner was obviously defended by skillful counsel, who-well understood what the law was, and would have been sure to have the jury fully informed on the subject, if' they had been uninformed on any point which the interest of his client required them to 'understand. He-asked for no instruction to the jury; and the presumption therefore is that they needed none. Supposing them to-have been already well informed; that the counsel on. both sides were agreed about the law, and stated it to the-jury with the approbation of the court, would the verdict be set aside or the judgment be reversed because the clerk did not also instruct them ? The clerk’s instruction or charge is without authority and nothing, except so far as it may be considered as having received the sanction of the court, and thus become the act of the court. As in the case of Allen v. The Commonwealth, 2 Leigh 727, in which the prisoner was indicted for an of-fence the punishment whereof was imprisonment for not less than me nor more than three years; but the-clerk, in charging the jury, stated that if they found the prisoner guilty, his term was to be not less than tioo nor more than three years. The general court considered this charge as equivalent to an instruction from the-court. It was given by an officer of the court, in the usual course of his duty, in the presence and hearing of the court; and not having been corrected by the court, *663 was to be regarded as having been sanctioned by it. Al- . , . though its effect did not appear, yet it might have mduced the jury to agree upon the term of hoo years the prisoner’s confinement, believing that to be the minimum, when, if they had been correctly informed of the law, they might have ascertained his imprisonment to be one year only. The judgment was therefore reversed, the verdict set aside, and a new trial ordered. 3 Rob. Pr., old ed., p. 175. Suppose that in that case the clerk had given no charge as to the term'of imprisonment, but the jury otherwise thoroughly understood it, as must be presumed to be the case in the absence of any evidence to the contrary, would the judgment have been reversed on that ground ? Certainly not. To be [sure it is usual and proper for the clerk to charge the jury as to the term of imprisonment of an offence to be tried by them, and also of the different grades of the offence, where it admits of grades, as in most cases of felonious homicide. This information is generally needed by the jury, and it is convenient for them to receive it from the clerk, in the presence and with the sanction of the court, when the jury are charged with the prisoner’s case. But, as said before, the law does not require it, as a matter of course, to be given, whether needed or not. In this case no such information was needed, or would have been appropriate. The charge was murder in the first degree by poison. The prisoner was either guilty of that of-fence or guilty of no offence at all. The law expressly declares murder by poison to be murder of the first degree. And if the prisoner was guilty of the murder as charged in the indictment, she must of necessity have been guilty of murder in the first degree. She could, by possibility, have been guilty of nothing else. And it could not, therefore, have been erroneous to charge the jury to that effect.. To have charged them as to what *664 constituted murder m the second degree, or voluntary or . involuntary manslaughter, or as to the measure ox the of each, could have answered no good purpose, and could have had no other effect, if any, than to confuse the jury or mislead them into error. Indeed it does not appear that the first and second hills of exceptions were taken because the clerk did not charge the jury “as to the different grades of homicide.” Nothing is said to that effect in either of those bills. It rather appears that the first was taken ouly because.the whole indictment, including both counts, was read to the jury, and they were charged thereon after the second had been quashed; and that the second bill was taken, only because the first count only was read to the jury, and they were charged thereon after both counts had been read and the jury had been charged thereon, as aforesaid. In each of the said bills it is stated that no objection had been previously made to the reading of the indictment and the charge given by the clerk in manner and form as stated in the said bills respectively. Thus showing that in each case the objection was taken after, and not before, the indictment was read and the charge given to the jury.
That part of the charge, which is to the effect that “ if you find that she attempted to administer poison with intent to kill or injure, she shall be confined in the penitentiary, so that such term be not less than three nor more than five years,” was certainly unnecessary and not required by anything in the facts of the case. It was intended to apply to the provision in the Code of 1860, ch. 191, § 7, which declares that “if any free person administer, or attempt to administer, any poison or destructive thing in food, drink, medicine or otherwise,” &c., “with intent to kill or injure another person, he shall, be confined in the penitentiary not less than three *665 nor more than five years; ” and also to apply to the provision in ch. 208, § 27, which declares that “if a person indicted of felony be by the jury acquitted of part and convicted of part of the offence charged, he shall be sentenced of such part as he is so convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor.” But though this part of the charge was unnecessary, it could not possibly have prejudiced the accused, and if it could have had any effect .at all, that effect would have been in her favor.
We are therefore of opinion that the Circuit court ■did not err in regard to the matter stated in the first .and second bills of exceptions, or either of them.
And now, as to the third bill of exceptions. That bill ■states that in the further progress of the case, after the •evidence and arguments of counsel had beeu concluded, .and the court, upon the motion of the prisoner’s counsel, •had instructed the jury as to the law, in terms that were ¡accepted by the counsel on both sides and not objected do by either, the jury retired and in a short time returned into court and rendered the following verdict: “We, the jury, find the prisoner guilty of murderin' the first degree, as charged in the indictment.” And thereupon ¡the prisoner, by counsel, moved the court in arrest of .judgment for the following reasons, viz:
First. Because the said verdict does not specify the ¡prisoner by name.
Second. For the reason specified in the first and second bills of exceptions.
Third. Because the indictment does not charge that the prisoner knew the substance alleged to have been used in producing the death of William Thornton -was a deadly poison.
The learned counsel for the accused seems to lay little or no stress upon the ground of error presented by this *666 bill of exceptions, and we think properly so. As to the first reason assigned in the said bill, the verdict, as redoes specify the prisoner by name, and the jury,. according to the usual form, is called upon to “listen h> ^¡ie verdict as the court hath recorded it.” To be sure, , ’ the verdict written by the jury seems not to have specified the prisoner by name. But the whole record indicates conclusively that the plaintiff in error ivas the “prisoner,” who was found by the jury “guilty of murder in the first degree, as charged in the indictment.”
As to the second reason assigned in the said bill, being-the reasons specified in the first and second bills of exceptions, that objection has already been disposed of.
As to the third reason assigned in said bill, although it may have been the general practice formerly to charge,, in an indictment for murder by poison, that the accused knew the substance alleged to have been used in producing death was a deadly poison, yet it was held, as long ago as Mary Blandy’s case (1 Hargrave’s State Trials, 1), referred to by the attorney-general in this case, that such an averment is unnecessary. She was condemned and executed for murder by poison, and no such averment was contained in the indictment against her. A copy of the indictment may be found in 3 Chitt. Crim. Law, p. 773, marg.: and it may now be considered as well settled that such an averment is unnecessary. See Commonwealth v. Earle, 1 Whart. R., 525, also referred to by the attorney-general. See, also, the form of such an indictment in 1 Arch. Cr. Pr. & Pl., with Waterman’s notes, p. 944, top, 256 marg., which contains no such averment. There is, certainly, no good reason for requiring such an averment, in addition to the other averments contained in the indictment; and cei’tainly the defect arising from its omission, if such a defect at any time existed, was cured by the healing effect of our broad *667 statute of jeofails in criminal cases; the objection having been made, for the first time, after verdict.
¥e are therefore of opinion that the Circuit did not err in overruling the motion in arrest of judgment. •
And now, as to the fourth and last bill of exceptions. That bill states that after the jury had rendered their verdict of “guilty of murder in the first degree,” the' prisoner, by counsel, moved the court to set aside the verdict and award a new trial: first, because the said” verdict is contrary to the law and the evidence; and,second, because of an erroneous statement made to the' jury by the court, in this, to wit: After the evidence and argument of counsel were concluded, the jury retired to’ their room, and after a short time returned into the court-' room, and one of the jurors enquired of the court, in-the presence of all the jury, the prisoner and the coun-' sel, if they had a right in this case to find the prisoner guilty of any less crime than “ murder in the first degree?” The court, understanding the juror as referring to the second count having been quashed, and meaning “if the offence is proven as charged in the indictment,” (though he had not said so in terms,) replied, “bio; she is charged with nothing else; the second count has been quashed.”
The juror who made the enquiry then repeated it more explicitly, as if seeking more fully to understand the court, to the effect: “If we believe, from the evidence, that she did administer the poison with intent to kill her husband, and that he died from it, can we find her guilty of anything less than murder in the first degree ? ” The court replied, “If you believe, from the evidence, that she did in person, or through the agency of another acting under her directions, administer poison to her husband, and that she did intend thereby to kill him, and that he *668 did actually die therefrom, the law presumes malice, and you ought to find her guilty of murder in the first degree; if you do not thus believe, then you will find her not guilty.”
The prisoner’s counsel expressed no dissent or objection to the question, reply or explanations, and took no exception.
The-court overruled the motion to set aside the verdict and award a new trial for the reasons aforesaid.
We will first consider the second reason above as-, signed, “because of an erroneous statement made to the jury by the court,” as aforesaid.
We must take the whole account together, as given in the bill of exceptions, of this alleged erroneous statement made to the jury by the court. If we can suppose it possible that the jury had a right, in this case, in any view of it, to find the prisoner guilty of any less crime than murder in the first degree, certainly they had no such right, understanding the question of the jury to be qualified by the condition “if the offence is proven as charged in the indictment,” as the Circuit court understood it. But it was perfectly competent for the juror to explain his own meaning, and he did immediately explain it, and thus placed it beyond all controversy. So explained, the question of the juror ran thus: “If we believe, from the evidence, that she did administer the poison with intent to kill her husband, and that he died from it, can we find her guilty of anything less than murder in the first degree?” Certainly that question ■could not properly have been answered otherwise than in the negative, and the plainest, and perhaps best an■swer which could have been made to it was, “Ho.” The •court, however, answered the question in detail; and the question is, whether there be anything in that answer -which can make the judgment erroneous? If there be, *669 certainly no objection was taken by the prisoner’s counsel on that ground at that time. It is expressly stated in the bill of exceptions that he “ expressed no dissent or objection to the question, reply or explanations, and took no exception.” Still, if there be anything in that answer which is erroneous, and could have prejudiced the prisoner, it might, and no doubt would be proper for the court to give her the benefit of the error now, though not objected to at the time, nor on the motion for a new trial, nor assigned as error in this court. If there be any such error it consists in supposing, if the answer does suppose, that the prisoner might be guilty only as accessory before the fact, and yet be properly found guilty of murder in the first degree, on the indictment in this case. At common law an accessory could not be convicted on an indictment against him as a principal felon, nor could the accessory be convicted until after the conviction of the princip al, though he might be included in the same indictment, and tried at the same time, with the principal. Our statute has made very material changes in the law, in regard to accessories before the fact, in cases of felony. The Code of 1860, p. 813, ch. 199, § 7, provides that “in the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree.” And Id., § 9, provides that “ an accessory, either before or after the fact, may, whether the principal felon be convicted or not, or be amenable to justice or not, be indicted, convicted and punished in the county or corporation in which he became accessory, or in which the principal felon might be indicted. Any such accessory before the fact may be indicted, either with such principal or separately.”
Far as these changes have gone, they seem not to have *670 gone far enough to make an accessory before the fact to ° ° , “ felony liable to be convicted on an indictment against as principal. In England the statute of 11 and 12 Vict. c. 46, s. 1, has gone to that extent, in declaring that “ if any person shall become an accessory before the fact to auy felony, whether the same be felony at common law or by virtue of any statute or statutes made or .to be made, such person may be in dieted, tried, convicted .and ppnished, in all respects as if he were a principal .felon.” “In all cases of felony,” in England, “therefore, the accessory is punishable in the same manner precisely as the principal felon; and he may now be indicted, either as a principal — that is, he may be charged jn the indictment with having actually committed the offence as principal in the first degree — or he may be in-dieted as accessory, as for a substantive felony — or he .may be indicted as accessory, with the principal, at the .option of the prosecutor.” 1 Arch. Cr. Pr. and Pl., by Waterman, top 77, marg. 16. So also in Mississippi the ..statute has gone to that extent, in declaring that “every person who shall be accessory to any murder or other felony 'before the fact shall be deemed and considered as principal, and indicted and punished as such; and -.this, whether the principal has been previously convicted ,or not.” Rev. Code 572, art. 2; Josephine (a slave) v. The State, 39 Miss. R. 647. The statutes of some of the .other States have no doubt gone to the same extent. But ours, as before stated, have not yet gone so far.
If, therefore, the Circuit court in this case, in saying to -,the jury that if they believed from the evidence that the ^prisoner did, in person or through the agency of another acting under her directions, administer poison, &c., to her husband, &c., intended to say to them that an accessory ■before the fact to murder might be convicted on an indictment 'against-him as a principal, we think the court *671 ■erred in that respect. The words “ through the agency ■of another, acting under her direction,” are equally consistent with the idea of the absence or presence of the prisoner at the time of her commission of the offence through such agency. If they were used by the Circuit court in the latter sense, and they could properly be construed in that sense, then there was no error. For a person present, directing, aiding or abetting in the commission of a felony, is a principal in the second degree, between whom aud a principal in the first degree there is no substantial difference, and both may be indicted and convicted as principal in the first degree.
But assuming, as it may be proper to assume, that the words were used in the former sense, or at least in either •sense indifferently, and that the court erred in thus using them, is it an error for which the judgment ought to be reversed? It was not excepted to at the time it is supposed to have been committed, nor until after verdict, and on the motion for a new trial. In fact the objection that the words in question convey, and were intended to convey, the idea that the prisoner was, or may have been, a mere accessory before the fact, never has beeu taken by the prisoner or her counsel, either in the court below or in this court. Ho doubt because no such idea ever entered the mind of either. In truth there was nothing in the evidence to afford any foundation for such an idea, and an instruction assuming that the prisoner was a mere accessory before the fact would have been an abstraction, without any sufficient warrant in the evidence for its support. It is therefore at least doubtful whether the ■objection would have been of any avail if tafeen in due time. But not having beeu taken in due time, the question whether it is now available is a very different one from what it would have been if the objection had been "taken in time. The principles applicable to such a case *672 were declared by this court m Bull's case, 14 Gratt., 613.lhere was a motion in that case to set aside the verdict misdirection in giving an instruction which was not a^ ^jme_ «(joeg 110^ appear,” said the court, “ that the prisoner was dissatisfied with this instruction at the time it was given, hut the contrary is to-be presumed. He did not except to it nor save the point, but asked the court further to instruct the jury; which further instruction the court gave in the very words in which it was asked. It cannot be expected that a court, in the hurry of a criminal trial, can be always ready to define a crime, or discriminate between the different grades of a crime in the same accuracy of language which would be used by a writer on criminal law. If a party be dissatisfied with an instruction he ought to state his objections at the time in order that the court may have an opportunity of removing them. If no objection be made at the time, nor any exception be then taken on the point saved, but objection be made for the first time after verdict, and in the form of a motion to set it aside, the court will consider whether, under all the circumstances, the party has been prejudiced by the instruction, and if of opinion that a just verdict has been rendered according to the law and the evidence, will not set it aside on account of that objection. Viewing' the case in that aspect, this court certainly cannot say that the Circuit court erred in refusing to set aside the verdict for misdirection.” These principles are at least as applicable to this case as they were to that in which they were declared, and we may well conclude what we have to say on this subject in the words in which the above quotation is concluded, that, “viewing the case in that aspect,this court certainly cannot say that the Circuit court erred in refusing to set aside the verdict for misdirection.”
We'will now consider the only remaining question in *673 this case, whether the verdict was contrary to the law . and the evidence? being the first reason assigned in the fourth bill of exceptions for setting aside the verdict and ,. , . awarding a new trial.
The facts proved on the trial are certified on the record, and are substantially as follows:
The prisoner, Susan Thornton, was the wife of William Thornton, and resided with her said husband on the land of Mr. Douglas Hancock, near the Red House, in the county of Charlotte. They lived unhappily together in consequence of an improper intimacy and intercourse between the prisoner and a colored man named Ed. Robinson, who lived on the same place, in a house to himself in Mr. Hancock’s yard. Prisoner was the cook of Mr. Hancock, and, when the day’s work was over, usually returned home to the house of her husband, about one-fourth of a mile distant, though she often stopped at Ed. Robinson’s house, where she sometimes remained with him all night; was frequently seen there at various hours in the night, and sometimes about daylight. She washed for Ed. Robinson. Their intimacy having become generally known in the community, she and Ed. Robinson were summoned before the church of which they were members, the first Sunday in July 1872, admonished of the impropriety of their course, and urged to abandon it; and upon refusal, were each turned out of the church, and their names stricken from the list of members. Prisoner told the church, members, when she was thus arraigned, that her husband was too old for her, could not attend to her, and she meant to get rid of him, and if Ed. Robinson wanted her she would have him, and no one could prevent her.
William Thornton was sixty or sixty-five years old, was jealous of his wife’s intimacy with Ed. Robinson, and he and his wife did not live agreeably together on *674 that account, though she continued to be recognized and treated by him as his wife, having free access to him and his house as her home. She absented herself more frequently and for longer periods after she was turned out of the church. Ho one lived in the house with them except the children and a colored girl who was hired to assist in taking care of the children during the absence of the prisoner.
On Friday the 25th of October prisoner went to the store of Mr. Musgrove, at the Red House, and bought of him two table-spoonsful of arsenic; said she wanted it for her hogs, to prevent them from being stolen. The merchant, Musgrove, told her it was a dangerous and deadly poison, and cautioned her about its use, lest some person might be poisoned by it. During that week William Thornton was working at Mr. J. D. Hancock’s, took his meals from Mr. Hancock’s table, left there as well as ever on Saturday evening, 26th October, about an hour or an hour and a half by sun, to return home, and was taken violently ill during that night, with sick stomach and violent pain in the region of the bowels, with bloody discharges, and with indications of inflammation, and such symptoms as would be produced by poison, but might have been produced by other causes. At that time the colored hired girl was absent, on a yisit to her relations about eight miles oft'; several persons called to see him the next day and for a day or two thereafter; among others Mrs. Hancock, who administered to him a glass of Brandy; his wife was there during his illness; he died the following Thursday, and was buried in a substautial coffin in the usual way on the following Friday.
Prisoner was called upon by Mr. Hancock and others; went to Ed. Robinson’s house, of which she had the key, and took out a brown paper containing a small portion *675 of a white substance supposed to be arsenic, and delivered it up.
She afterwards left the neighborhood; an officer, Mr. Ford, was sent with process to the county of Halifax to arrest her, and was accompanied by Mr. Hancock; they found her, and as they entered the house she threw herself quickly on the bed, with her back to them. Mr. Hancock took hold of her, addressed her by name, when she denied that she was Susan Thorntou, or that she knew Mr. Hancock or his father, and other persons in the neighborhood of the Red House, about whom she was asked; said her name was Sarah Rice, and that she was raised in Halifax; she did not appear much frightened ; afterwards acknowledged that she was Susan Thornton; knew Mr. Hancock and his father, her former master who raised her, and many in the neighborhood about whom she was asked; was fully identified, carried back under arrest to Charlotte and committed to jail.
The body of William Thornton was disinterred about four days after his burial; an experienced physician was present and opened the stomach. There were signs of much inflammation ; the liver, lungs and bowels were greatly inflamed. The stomach indicated the presence of some kind of poison, but what kind could not be ascertained by the inspection that was then given. The stomach was afterwards taken out and carried to a chemist, who carefully examined it, subjected its contents to several well known tests, and was fully satisfied of the existence of arsenic therein. The examination of the stomach and analysis of its contents was conducted with great care by Hr. Michie, who had made himself familiar with the mode of detecting the presence of poison, and was fully satisfied of the presence of arsenic in that stomach in sufficient quantity to produce death.
Such being the facts of the case, (which speak plainly *676 enough for themselves without any comment-,) are they sufficient to sustain the verdict of the jury? Or rather, are they so plainly insufficient as to warrant this court in reversing the judgment of the Circuit court for overruling the motion of the prisoner to set aside the verdict and grant a new trial, on the ground that the verdict was contrary to the law and the evidence ? For that is-the true and only question which we have to decide on the subject now before us.
We are clearly of opinion that, according to the well-settled authorities on the subject, we would not be warranted in reversing the judgment on that ground. In Grayson’s case, 6 Gratt. 724, the rules of law in regard to new trials are briefly and clearly laid down. Under the third head, the court say, that “where some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, anew trial will not be granted merely because the court, if upon the jury, would have given a different verdict. To warrant a new trial in such cases the evidence should be plainly insufficient to warrant the finding of the jury. And this restriction applies, a fortiori, to an appellate court.” Without referring in detail to-the many decisions of this court on the subject, it is sufficient to refer to Read’s case, 22 Gratt. 924, 941, 945, where all those decisions are cited, and most of them briefly stated. In this case two juries concurred in finding the prisoner guilty of murder in the first degree ; and the judge who presided at the trial refused to set aside the last verdict, and rendered judgment thereiqion.
We think there is no error in the judgment, and that it ought to be affirmed.
Judgment appirmed.