75  925
99  861
99  864
99  866

## Richmond.

### HATCHETT v. THE COMMONWEALTH.

#### Absent, *Moncure*, P.

An accessory to a felony cannot be prosecuted for a substantive offence, but only as an accessory to the crime perpetrated by the principal felon. And, in order to his conviction, although it is not necessary now to show that the principal felon has been convicted, it is necessary to show that the substantive offence, to which he is charged as having been accessory, has been committed by the principal felon.

This is a writ of error and *supersedeas* to a judgment of the circuit court of Brunswick county, rendered at the April term, 1881, sentencing Littleton Hatchett to be hanged, who was indicted jointly with Oliver Hatchett and Henry Carroll, for the murder of Moses Young, by poison—the said Oliver Hatchett as principal, and the others as accessories before the fact.

During the trial the prisoner moved for the following instructions to the jury, marked 1, 2 and 3, as follows:

"1. Upon the trial of a criminal cause, if a reasonable doubt of any facts necessary to convict the prisoner is raised in the minds of the jury by the evidence itself, or by the ingenuity of counsel, upon any hypothesis consistent therewith, that doubt is decisive in favor of the prisoner's acquital.

" A verdict of not guilty means no more than this: That the guilt of the accused has not been demonstrated in the precise, specific and narrow forms prescribed by law. The evidence to convict the prisoner must not merely be beyond all reasonable doubt consistent with the hypothesis of his

guilt, but it must also be beyound all reasonable doubt inconsistent with any hypothesis of innocence that can be reasonably drawn therefrom.

" 2. In order to convict the prisoner under this indictment, the jury must be satisfied from the evidence, beyond all reasonable doubt, that the prisoner, Littleton Hatchett, received the tickler of whiskey from Henry Carroll, knowing that it contained strychnine, and carried it to Moses Young, or caused it to be carried to him by Oliver Hatchett, with the willful, deliberate and premeditated purpose to kill and murder said Moses Young; and that a drink of whiskey containing strychnine, or other poison, was administered by said Oliver Hatchett to the said Moses Young, and that said drink was the cause of his death.

" 3. The court instructs the jury that the confessions of the prisoner at the bar, Littleton Hatchett, were not such voluntary confessions, made without inducement of any kind held out to the prisoner, or hope of advantage to be derived therefrom, as the law permits to be used against him, and therefore that the jury cannot regard them as evidence in the cause."

The court gave the first and second instructions, but refused to give the third instruction, to which refusal of the court to give the third instruction, the prisoner excepted. In this, the first bill of exceptions, the court certifies the facts proved are as follows: "That about three weeks before the death of Moses Young, Henry Carroll and Sallie Young, the wife of said Moses Young, went to the house of Osborne Northington, and that Sallie Young said to Henry Carroll, handing him a small bag containing a bottle, " here is your strychnine; I have tried it three times on old Moses, and 'taint no account," and he said " it is a damn lie; it is account, for I tried it on Caroline's dog, and a duck got a crumb of the bread and it killed both," and she said, " I can't help it, if it is account; I

Hatchett v. The Commonwealth.

can't try it any more"; and he said you had your pleasures in your own hands and would not use them, and I shall have nothing. more to do with you. That on the evening of the night Moses Young died, Oliver Hatchett came to the house of Osborne Northington and asked him to have his shoes mended; that Osborne told him he did not have time; that Oliver stayed about five minutes and went out, and went to the corner of the house towards Moses Young's; that about this time a witness (Howard Gray) passed, and said he heard a strange voice, not that of any one living there, enquire the way to Moses Young's house, said to be about 200 or 250 yards distant; but Osborne said no one asked the way to Moses Young's house; both are witnesses for the Commonwealth. That Sallie Young stated that on the same night a strange man came to Moses Young's house and called, and that Moses went out, and the stranger and Moses Young took supper together; that she did not eat with them, and did not notice the man particularly; that she did not know Oliver Hatchett, and had never seen Littleton Hatchett but once or twice; that no enmity existed between herself and Littleton Hatchett, or her husband and Littleton Hatchett, as far as she knew, and the stranger appeared to be a darker man, but about the same size as Oliver; that there was a dim light in the room where they eat supper; that she had a plateful of fried hog liver and spare rib for supper; that her husband had been subject to colic ever since she knew him; that after supper the stranger and her husband walked out, and pretty soon he came back and commenced picking cotton; that in a short time he said he believed that pain in his side had gotten worse; that he pretty soon became worse, and said that the stranger had given him a drink out of a tickler, and that he believed he had tricked him; that the dying declarations of Moses were that he would be killed by the drink given him out of the tickler by the stranger;

he then started to get up, and fell out in the floor; he then laid down, and the witnesses stated that every now and then his arms and legs would draw up, and he would complain of being cramped; that these symptoms continued until his death, which occurred in about three hours. That Osborne Northington was sent for, and he and his wife came to Moses' house; that salt and water and soda and water were given to Moses by Sallie Young, his wife, to make him vomit, but had no effect; he then ran his finger down his throat, and his teeth clenched on it so that one of his teeth was pulled out in getting out his finger; that Moses was about 65, and Sallie, his wife, about 25 years of age; that Dr. Powell and Dr. Rose, examined by the Commonwealth, stated that from the symptoms above described, as narrated by Osborne Northington, his wife and Sallie Young, who are negroes, that it was their opinion that he died from strychnine; no analysis of the deceased man's stomach was proved to have been made; that an inquest was held and continued for two or three days; that on Monday evening after the death of Moses Young, the prisoner was examined before the coronor's jury and discharged; that about twelve o'clock of that night Mr. Williams, a special constable appointed by the coroner, was sent to arrest the prisoner and bring him before the coroner, and also to bring the tickler, which it was said was hid in the shuck-pen, near the prisoner's house; that the constable went to the prisoner's house, and finding him in bed told him that he must dress and go back with him; that while he was dressing the constable remarked to the wife of Oliver Hatchett, in the presence of the prisoner, that Oliver Hatchett had confessed all about the tickler and that it was in the shuck-pen, between the plow handles, and that he wanted the prisoner to show him where it was; and that on going to the shuck-pen with the prisoner and not finding the tickler, he, the constable, said to the prisoner: "You had better tell me where the tickler is,

and save me the trouble of riding back here again to-morrow through the snow"; after this the witness voluntarily stated that he wanted to correct the statment he had made on the stand, and that the words used to the prisoner were—"I wish you would tell me where the tickler is, and save me the trouble of coming back here to-morrow through the snow"; that the prisoner did not tell where the tickler was; that the constable, taking the prisoner up behind him on his horse, carried him through the snow to the store where the coroner was; that on arriving there the prisoner was carried into a small room, about fourteen by twelve feet, where the coroner and other officers, and Oliver Hatchett, the son of the prisoner, were; that the coroner was lying on the bed and Oliver Hatchett sitting near him; that the prisoner took a seat by Oliver and entered into conversation with him; that after he had conversed with him a short while, some person present asked the prisoner a question, whereupon his son Oliver said, " Pa, if any body gave you that tickler to send to Moses Young, you had better tell all about it; it may be better for you"; whereupon the prisoner turned to his son and asked, "Who was that that came to my house Monday morning, and called you out," and that Oliver answered it was Henry Carroll, and he told me if they summoned me before the inquest to say I went to Osborne's Friday night to have my shoes mended. And the prisoner then confessed that Henry Carroll had given him the tickler to send to Moses Young; that the said Carroll said it contained strychnine, and that if he would send it to old Moses before he (Carroll) come back from Petersburg, he would give him a gun, five pounds of sugar and $10 in money, and that it would fix him, or that it would be all right—the witness not remembering which.

" There were four witnesses who alone testified for the Commonwealth as to these confessions, each of whom stated

that they did not know that they gave all the confessions, but that what they did remember was stated by the prisoner; that the prisoner said other things that they did not remember; that before the full confession was made, when some question was asked the prisoner, the coroner said so as to be heard, 'If he is going to make a confession, let it be voluntery.' It was further proved that when the constable went back to the prisoner's house the next morning, the prisoner went to a log in the woods and got the bottle and gave it to him."

After the jury had rendered their verdict, the prisoner, by his counsel, moved the court to set aside the verdict and grant the prisoner a new trial upon the ground that the verdict of the jury was contrary to the law and the evidence as set forth in the bill of exception, which motion the court overruled; and the prisoner excepted to this ruling of the court.

*Friend & Davis*, for the plaintiff in error.

*The Attorney-General*, for the Commonwealth.

Anderson, J., delivered the opinion of the court.

The prisoner, Littleton Hatchett, was indicted jointly with Oliver Hatchett and Henry Carroll; Oliver Hatchett for the willful and malicious murder of Moses Young by poison, Henry Carroll and Littleton Hatchett, the prisoner, as accessories before the fact. It is stated in the petition that Carroll has been tried and acquitted. Oliver, who is charged as principal, had not been tried, but was still under arrest.

The court is of opinion that the evidence is insufficient to connect Oliver Hatchett, who is charged as principal with the perpetration of this crime, to warrant the conviction of the prisoner as an accessory before the fact.

At common law the accessory could not be tried until the principal had been convicted by the verdict of a jury, (or outlawed), and the only evidence which was admissible to prove the principal's guilt, was the record of his conviction by the verdict of a jury in a court of competent jurisdiction. In England, and some of the American States, the common law rule has been subverted by statute, which provides that an accessory before the fact to a felony "may be indicted, tried, convicted and punished, in all respects as if he were a principal felon." Our statute does not go so far. It provides (Acts of Assembly, 1877, p. 312, ch. 10, § 7) that "in the case of every felon, every principal in the second degree, and every accessory before the fact, shall be *punished* as if he were the principal in the first degree; and by § 9, an accessory, either before or after the fact, may, whether the principal felon be convicted or not, or be amenable to justice or not, be indicted, convicted and punished, and an accessory before the fact may be indicted either with the principal or separately. These provisions are the same in the Code. It does not provide, as the Pennsylvania statute does, which is substantially a copy of the English statute, that he is to be indicted, tried and convicted in all respects as if he were the principal in the first degree. It is implied by the Virginia statute that he must be indicted, tried and convicted as an accessory before the fact, though he shall be punished as if he were the principal in the first degree. He may be indicted, convicted and punished, whether accessory before or after the fact, by express terms of the statute, but it is as accessory, whether the principal felon has been convicted or not, and the accessory before the fact may be indicted either with the principal or separately, of course, as accessory. He could only be indicted under this statute as accessory. It gives no authority to indict him as principal. Accordingly in *Thornton's case*, 24 Gratt. 669–70, it was held by this court

that "our statute has not gone far enough to make an accessory before the fact to a felony liable to be convicted on an indictment against him as principal." Upon this view of the statute the conclusion is obvious that an accessory to a felony cannot be prosecuted for a substantive offence, but only as an accessory to the crime perpetrated by the principal felon, and in order to his conviction, although it is not necessary now to show that the principal felon has been convicted, it is necessary to show that the substantive offence, to which he is charged as having been accessory, has been committed by the principal felon.

The court is of opinion that the evidence is clearly insufficient to convict Oliver Hatchett, as principal, with administering the poison. It is in proof that Oliver Hatchett came to Osborne Northington's house on the evening of the night that Moses Young died, and asked to have his shoes mended. On being told by Osborne that he did not have time, he left in about five minutes, and went to the corner of the house towards Moses Young's, whose house was about 200 or 250 yards distant. One of the witnesses for the Commonwealth, who was passing about that time, said he heard a strange voice, not of any one living there, enquiring the way to Moses Young's house; but Osborne, who was also a witness for the Commonwealth, said no one asked the way to Moses Young's house.

No witness testifies that Oliver Hatchett was at Moses Young's house that night. Sally Young, the wife of Moses Young, testified that a stranger came to her husband's house that night, and that after supper the stranger and her husband walked out, and pretty soon he came back in the house and in short time said he believed that pain in his side had gotten worse. And he pretty soon became worse, and said that the stranger had given him a drink out of a tickler, and that he believed he had tricked him, and his dying declaration was that he would be killed by the drink given

him by the stranger out of the tickler. She testified that she did not know Oliver Hatchet—that the stranger appeared to be a darker man than Oliver Hatchett, but about his size. This is the only evidence we find in the record tending to identify Oliver Hatchett with the stranger, who, Moses Young said, gave him a drink out of the tickler, which, according to his dying declaration, would kill him. The court is of opinion that the evidence is plainly insufficient to convict Oliver Hatchett, who is indicted as principal with the killing, or to show that he was guilty of administering the poison.

The court is of opinion that the court below did not err in refusing to give the prisoner's third instruction to the jury; but that it did err in overruling his motion for a new trial. The court is of opinion, for the reasons heretofore given, to reverse the judgment of the court below, to set aside the verdict of the jury and to award the prisoner a new trial.

The judgment was as follows:

The court is of opinion, for reason stated in writing and filed with the record, that the judgment of the court below is erroneous; it is, therefore, considered that the said judgment be reversed and annulled; and the court proceeding to render such judgment as ought to have been rendered by the court below, it is considered that the verdict of the jury be set aside and a new trial be awarded the prisoner.

JUDGMENT REVERSED.