## Wytheville.

## JOSEPH EDENS v. COMMONWEALTH.

### June 25, 1925.

1. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Joinder of Count Charging Felony with a Count Charging Misdemeanor.*—At common law a count charging a felony could not be joined in the same indictment with a count charging a misdemeanor. But following the weight of authority, which has with it the weight of reason, the Supreme Court of Appeals held, in the instant case, that there might be a joinder of a felony and a misdemeanor count in the same indictment, when one and the same criminal transaction is involved in the different counts, or the felonies and misdemeanors charged form distinct stages in the same offense.

2. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Joinder of Count Charging Felony with a Count Charging Misdemeanor—Intoxicating Liquors—Case at Bar.*—In the instant case an indictment charged in the first count the unlawful manufacture of ardent spirits, and in the second count that accused unlawfully carried a pistol while engaged in the manufacture of ardent spirits.

   *Held:* That the trial court did not err in overruling a demurrer to the indictment on the ground that the charge of felony and the charge of misdemeanor were joined in the same indictment.

3. INTOXICATING LIQUORS—*Manufacturing—Carrying Dangerous Weapons—Indictment Following Language of Statute.*—Acts of 1924, chapter 407, section 9, provides that if any person shall unlawfully manufacture ardent spirits and at the time of such manufacturing carry on his person, or have in his possession, a dangerous weapon, etc. The indictment in the instant case in the first count charged defendant with unlawfully manufacturing ardent spirits strictly in accordance with the statute; in the second count it was alleged that "while they as aforesaid were engaged in the manufacture of ardent spirits" accused carried about his person a dangerous weapon. It was objected that the indictment did not follow the language of the statute and made the gravamen of the offense the possession of the dangerous weapon, and the allegation as to the manufacture of ardent spirits a mere recital.

*Held:* That there might have been force in this contention if it were not for the fact that the pleader made direct reference to the manufacture of ardent spirits as charged in the first count in the indictment. The charge in the second count could only mean that while he was engaged in the manufacture of ardent spirits, as charged in the count first preceding, he had in his possession dangerous weapons. The indictment while loosely drawn, substantially followed the statute.

4. Intoxicating Liquors—*Witnesses—Opinion Evidence—Venue—Harmless Error.*—In a prosecution for violation of the prohibition act a witness was asked in what county he found the still and parties. He replied: "From my information and from what I have been shown by people who live in that community as the line, it is in Scott county."

*Held:* That the admission of this answer was not error, but if error harmless, as another witness had testified that the place was in Scott county and there was no evidence introduced by the defendant to the contrary.

5. Reasonable Doubt—*Instructions—Definition.*—In the instant case the court instructed the jury that "a reasonable doubt is such a doubt as may be honestly and reasonably entertained as to the offense charged. Reasonable doubt must be based upon the evidence, any substantial and material fact essential to prove the offense or that is suggested by the evidence, or grows out of the evidence itself. It must not be arbitrary doubt without evidence to sustain it. It must be serious and substantial in order to warrant an acquittal. It must be a doubt of material fact or facts necessary for the jury to believe to find a verdict of conviction, and not of immaterial and non-essential circumstances."

*Held:* That while this instruction has been criticised, upon the whole it fairly defines reasonable doubt.

6. Argument of Counsel—*Intoxicating Liquors—Describing Witnesses as Coming from a Nest of Bootleggers.*—In a prosecution for violation of the prohibition law the Commonwealth's attorney described the witnesses for the defendant who had contradicted the officers of the law, who had testified in the case, as coming from a "nest of moonshiners and sympathizers." The officers who made the raid positively identified the accused as one of the parties they saw at the still operating it. Accused introduced on his behalf, to contradict the officers, his wife, one charged jointly with him, and his father-in-law, and one who had been arrested as one of the operators of the same still.

*Held:* That there was no prejudicial departure in the argument from the evidence and from fair inferences that arise therefrom.

7. Arguments of Counsel—*When Reversible Error.*—Courts ought not to reverse cases because counsel, in the heat of argument, some-

times wander a little way outside the record.   If a matter of great
materiality is brought into the record as a matter of extended com-
ment, then there would be reason for setting aside the verdict.
If every immaterial assertion or statement which creeps into an
argument were to be held ground for reversal, courts would be so
much occupied in criticising the addresses of advocates as to have
little time for anything else.   Common fairness requires that courts
should ascribe to jurors ordinary intelligence, and not disregard
their verdicts because counsel during the argument may have made
some general statement not supported by the evidence.

8. ARGUMENTS OF COUNSEL—*Argument Provoked by Remarks of Opposing
Counsel.*—Where counsel for accused provoked a remark of the
.Commonwealth's attorney as to witnesses for the accused coming
from a nest of bootleggers, by his taunting reference to the officers
of the law appearing in their uniforms with brass buttons, when in
fact there were no uniforms or brass buttons, he cannot be heard to
complain of the Commonwealth attorney's remark.

9. ARGUMENTS OF COUNSEL—*Latitude Allowed Counsel for Accused.*—While
counsel for defendants charged with crime, under the Virginia
practice, have been accorded more latitude than prosecuting attor-
neys in their argument to the jury, there is no sound reason for so
doing.

10. INTOXICATING LIQUORS—*Manufacturing Liquor—Carrying Weapons—
Evidence Sufficient to Support Verdict of Guilty.*—In the instant case
accused was convicted of a violation of the prohibition law.   A
State prohibition agent, two county policemen, and a deputy sheriff,
all testified that they knew accused well, and that they raided a
still in Scott county on a certain date, and positively recognized the
accused and another actually operating the still; that the two men
fired upon the officers and escaped, but were arrested later.   The
evidence on the question of accused's *alibi* was conflicting.

*Held:*   That a verdict of guilty of unlawfully manufacturing ardent
spirits and the possession of a dangerous weapon while so engaged
was fully supported by the evidence.

Error to a judgment of the Circuit Court of Scott
county.

*Affirmed.*

The opinion states the case.

*W. S. Cox* and *S. H. Bond,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile,*

*Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

The accused and one Raymond Baker were jointly indicted by a grand jury in the Circuit Court of Scott county for violation of the prohibition law.

The defendants elected to be tried separately, and Joseph Edens, with whom we are concerned, was convicted of manufacturing ardent spirits while armed, and sentenced to confinement in the county jail for a period of twelve months. From that judgment of the trial court a writ of error was awarded him upon his petition, in which five grounds of error are assigned.

The first assignment is to the action of the trial court in overruling the demurrer to the indictment as a whole and to each count thereof.

The indictment is in two counts. Omitting the formal parts it charges that Joseph Edens, "within twelve months next prior to the finding of this indictment, * * * * in the said county of Scott, did unlawfully manufacture ardent spirits," etc.

"And the jurors aforesaid, upon their oaths aforesaid, do further present that * * * Joseph Edens within twelve months next prior to the finding of this indictment, in the said county of Scott, while (he) as aforesaid was engaged in the manufacture of ardent spirits, and at the time and place of said manufacture did unlawfully and feloniously carry about (his) person (a) dangerous weapon, called a pistol," etc.

[1, 2] There are two grounds of demurrer.

The first objection is to the indictment as a whole, and the ground of demurrer is that a charge of felony and a charge of misdemeanor are joined in one and the

same indictment, and that this is not permissible under the common law rule as enunciated in *Scott* v. *Commonwealth*, 14 Gratt. (55 Va.) 687, and other cases.

It is true that at common law a count charging a felony could not be joined in the same indictment with a count charging a misdemeanor, and this State has been considered committed to this rule since the decision in *Scott* v. *Commonwealth*, *supra*. But the modern trend of decision has been to permit the joinder of felony and misdemeanor counts in the same indictment when one and the same criminal transaction is involved in the different counts, or the felonies and misdemeanors charged form distinct stages in the same offense. *Herman, et al.* v. *People*, 131 Ill. 594, 22 N. E. 471, 9 L. R. A. 182.

It has long been permissible in this State to convict of a misdemeanor where the indictment is for a felony, if the misdemeanor is a necessary part of the felony and is substantially charged in the indictment. Thus, upon trial under an indictment charging murder, the defendant may be convicted of assault and battery; one indicted for robbery may be convicted of assault and battery; and under the maiming statute, section 4402, Code 1919, one charged with felonious and malicious cutting or wounding with intent to maim, etc., may be found guilty of assault and battery. *Hardy and Curry* v. *Commonwealth*, 17 Gratt. (58 Va.) 592; *Canada* v. *Commonwealth*, 22 Gratt. (63 Va.) 899.

No injustice to the accused results from this practice, and as the reasons upon which the English rule against joining felonies and misdemeanors have ceased to exist, we can see no reason, except of a purely arbitrary and technical nature, preventive rather than promotive of the administration of justice, why the rule should not be extended to permit joinder of felony and misde-

meanor counts in the same indictment when one and the same criminal transaction is involved, or the felonies and misdemeanors charged form distinct stages in the same offense.

In the case of *State* v. *Stewart*, 59 Vt. 273, 9 A. 559, 59 Am. Rep. 710, the court said: "Although authorities can be found that lay down the rule that felonies and misdemeanors cannot be joined in the same indictment, still the rule in this State and most of the States is otherwise. It is always permissible for the pleader to set forth the offense he seeks to prosecute in all the various ways necessary to meet the possible phases of evidence that may appear at the trial. If the counts cover the same transaction, though involving offenses of different grades, the court has it in its power to preserve all rights of defense intact." Citing numerous authorities.

"The rule is inconsistent with the practice, which has long and uniformly prevailed in this State, of permitting, upon an indictment for felony, a conviction for a misdemeanor, which is included in the greater offense charged. It would be unreasonable to hold that upon an indictment for a felony defendant may be convicted of a misdemeanor, there being no count specifically charging such misdemeanor, and yet hold that, if there is such specific count, there can be no such conviction. We think the better rule to be to permit the joinder of counts, whether for felony or for misdemeanor, where one and the same criminal transaction is involved in the different counts, or the felonies and the misdemeanors charged form distinct stages in the same offense." See also 1 Bishop's Crim. Proc. (2d ed.), sections 445, 446; Wharton's Crim. Pl. & Pr., sections 288, 289.

We follow the weight of authority, since at this time, as clearly shown, we think it has with it the weight of reason.

It follows that the trial court did not err in overruling the demurrer upon this ground.

[3] The second ground of demurrer is that the indictment does not follow the statute.

The language of the statute (Acts 1924, chapter 407, section 9) is: "If any person shall unlawfully manufacture ardent spirits and at the time of such manufacturing carry on or about his person, or have in his possession," dangerous weapons, etc. The language of the indictment is: "While they as *aforesaid* (italics ours) were engaged in the manufacture of ardent spirits and at the time and place of said manufacture did unlawfully and feloniously carry about their persons dangerous weapons," etc. The only variance from the language of the statute suggested is that the pleader, instead of charging that the accused was unlawfully engaged in the manufacture of ardent spirits and while so engaged had in his possession dangerous weapons, etc., charged that while they *as aforesaid* were engaged in the manufacture of ardent spirits, and at the time and place of said manufacture, they unlawfully and feloniously had in their possession, etc.; thus making the gravamen of the offense, it is claimed, the having in possession of dangerous weapons, and the allegation as to the manufacture of ardent spirits a mere recital.

There would be force in this contention if it were not for the fact that the pleader made direct reference to the manufacture of ardent spirits as alleged in the first count of the indictment. In that count the defendant is charged with unlawfully manufacturing ardent spirits, strictly in accordance with the statute. In the second count it is alleged that "while they as aforesaid were engaged in the manufacture of ardent spirits." There is nothing here to mislead the accused. The charge in the second count could only mean that while he was en-

gaged in the manufacture of ardent spirits, as charged in the count first preceding, he had in his possession dangerous weapons. This is not an inference from facts alleged, as is held fatal in *Rose* v. *Com.*, 116 Va. 1023, 82 S. E. 699, but it is a direct reference to the manufacture of ardent spirits as described in the only other and immediately preceding count of the indictment.

While we regard the indictment as loosely drawn, and by no means a model to be followed, we think it substantially follows the statute, and for this reason the court properly overruled the demurrer upon this ground also.

[4] The second assignment of error is as to the action of the trial court in not striking out the answer of the witness, Redmon, to the question as to what county he found the still and parties in, to which he replied "from my information and from what I have been shown by people who live in that community as the line, it is in Scott county."

We see no error in the action of the court in refusing to strike this answer out, but if it was error to do so, it was harmless, because the county policeman, Ballard Meredith, who assisted in the raid, positively stated that it was in Scott county. There was no evidence introduced by defendant to the contrary. This assignment of error is, therefore, without merit.

[5] The third assignment of error is based upon an exception to instruction No. 3, given by the court over objection of counsel for defendant.

"The court instructs the jury that a reasonable doubt is such a doubt as may be honestly and reasonably entertained as to the offense charged.

"Reasonable doubt must be based upon the evidence, any substantial and material fact essential to prove the offense or that is suggested by the evidence, or grows

out of the evidence itself.    It must not be arbitrary doubt without evidence to sustain it.    It must be serious and substantial in order to warrant an acquittal. It must be a doubt of material fact or facts necessary for the jury to believe to find a verdict of conviction, and not of immaterial and nonessential circumstances."

We did not understand that it was seriously contended that this case should be reversed for this alleged error.    This instruction has passed in review before this court on more than one occasion, and while it has been criticised as not without objection, it has been held, upon the whole, fairly to define reasonable doubt.    The same objections insisted upon here were urged against it in the case of *McCue* v. *Com'th*, 103 Va. 912, 49 S. E. 623, and in the case of *McCoy* v. *Com'ih*, 133 Va. 731, 112 S. E. 704.    In each case the instruction was upheld, and the objections, here again urged, are no longer open questions in this State.

[6] The fourth assignment of error is based upon the action of the trial court in refusing to correct the statement made by the attorney for the Commonwealth in his closing argument to the jury.    That statement is as follows:

"Counsel for defendant says that the witnesses for the Commonwealth appear before you in their uniforms with brass buttons on their coats, and that they are contradicted by a number of witnesses.    I have not seen any brass buttons or uniforms on any or either of the officers who have testified in this case.    It is true a number of witnesses have contradicted them.    But what of it?  The witnesses for the Commonwealth are officers of the law.    The witnesses for the defendant who have contradicted them come from a nest of moonshiners and sympathizers and it is for you to determine the credibility of the witnesses."

The officers who made the raid positively identified the accused and Baker as the parties they saw at the still operating it. The prisoner introduced on his behalf to contradict the officers, especially as to the identification of the accused, his wife, Baker, charged jointly with him, Baker's father-in-law, and a man named Fritz who had been arrested as one of the operators of this same still. There was thus a sharp question of veracity raised between the officers on one side and the accused and his witnesses, close friends and relatives, on the other.

The bare statement of the foregoing facts indicates that there was no prejudicial departure from the evidence and from fair inferences that arise therefrom.

[7] This court said in *Seay* v. *Commonwealth*, 135 Va. 737, 115 S. E. 574, quoting from *Combs* v. *State*, 75 Ind. 215: "Courts ought not to reverse cases because counsel, in the heat of argument, sometimes * * * wander a little way outside the record. If a matter of great materiality is brought into the record as a matter of extended comment, then there would be reason for setting aside the verdict. If every immaterial assertion or statement which creeps into an argument were to be held ground for reversal, courts would be so much occupied in criticising the addresses of advocates as to have little time for anything else. Common fairness requires that courts should ascribe to jurors ordinary intelligence, and not to disregard their verdicts because counsel during the argument may have made some general statement not supported by the evidence."

[8, 9] But in addition, counsel for defendant had provoked the remarks of the Commonwealth's attorney by his taunting reference to the officers of the law appearing in their uniform with brass buttons, when in fact there were no uniforms or brass buttons, and while coun-

sel for defendants charged with crime, under our practice, have been accorded more latitude than prosecuting attorneys, in this respect, there is no sound reason for so doing. Here counsel for the accused threw the first brick, and he cannot be heard to complain of the mild and inoffensive return.

This assignment of error is without merit.

[10] The fifth and last assignment is, that the verdict was without evidence to support it.

As to this assignment, it is only necessary to say that while there is some conflict, there is ample evidence to support the verdict. O. H. Redmon, a State prohibition agent, J. S. Wagner and Ballard Meredith, Lee county policemen, and I. N. Kelly, a deputy sheriff of Lee county, all testify that they knew accused well, some of them had known him for many years; that they raided the still in Scott county on December 19, 1922, and that they positively recognized the accused, with Baker, actually operating the still; that the two men fired upon the officers and escaped, but were arrested later. The defendant undertook to prove an alibi. The conflict here was a question which the jury's verdict has decided, and their conclusion that the defendant was unlawfully manufacturing ardent spirits and while so engaged had in his possession a dangerous weapon is fully supported by the evidence.

*Affirmed.*