# Richmond.

## ·LEON SEAY v. COMMONWEALTH.     NO. 1

### *and*

## P. H. DAY v. COMMONWEALTH.     NO. 2. ·

January 18, 1923.

1. ARGUMENTS OF COUNSEL—*Commonwealth's Attorney—Remarks on Flagrancy of Offense—Case at Bar.*—In the instant case the action of the trial court in permitting a remark of the attorney for the Commonwealth, to the effect that the offense of the accused was the most flagrant he had seen during the past year, and the most flagrant he had tried for months and months, to go to the jury without any instruction of the court cautioning the jury that they were not to allow such remark to influence them in fixing the penalty which might be imposed by their verdict, in the event they found the accused guilty, did not constitute reversible error, as while the remark was improper and it would have been better practice for the trial judge to have stopped the remark before it was completed, or to have cautioned the jury on the subject, it was apparent that he did not do so for the reason that he felt that under the circumstances of the case, upon consideration of the whole statement of the Commonwealth's attorney, such remark was understood by the jury as stating merely the personal reason of the attorney for asking heavy penalties.

2. ARGUMENTS OF COUNSEL—*Commonwealth's Attorney—Remarks on Flagrancy of Offense—Materiality of Remarks of Attorney Upon Guilt or Innocence of Accused—Case at Bar.*—In the instant case, where the Commonwealth's attorney in argument remarked that the offense of accused was the most flagrant he had seen during the past year, and the most flagrant he had tried for months and months, the remark of the Commonwealth's attorney involved a mere expression of the opinion of the prosecuting attorney, not upon the guilt or innocence of the accused based upon facts not in evidence, but upon the flagrancy of the offense, and is to be distinguished from those cases where the remarks of the Commonwealth's attorney involved the utilization in argument of matters of fact of which there was no evidence before the jury, but which were very material upon the question of the guilt or innocence of the accused.

47

3. CRIMINAL LAW—*Instructions—Duty of Jury—Principles Understood by Everyone.*—In a prosecution for homicide the court refused to give an instruction upon the responsibility of the jurymen, and that each juror should realize that his own mind must be convinced beyond a reasonable doubt, and that if after consultation with his fellow jurors a juror entertained a reasonable doubt, it was his duty not to give up his own opinion simply because the balance of the jury were of a different opinion.

   *Held:* That the instruction might probably have been given with propriety, but it embodied principles so well understood and so fully covered by the oath of each juror that its refusal could not be deemed error.

4. JURY—*Duty of Juror.*—No juror should ever yield a conscientious opinion, deliberately formed after a full and fair investigation of the case, as to the guilt or innocence of the accused, but jurors should not be invited to disagree if they can.

5. JURY—*Duty of Jurors.*—The jury room is no place for pride of opinion or obstinacy. It is the duty of the jurors to discuss the evidence in a spirit of fairness and candor with each other, and, if it can be done without a sacrifice of conscientious convictions, to agree upon a verdict.

Error to a judgment of the Circuit Court of Halifax county.

*Affirmed.*

The record in these two cases are identical, with the single exception of the accused being a different person in the respective cases and so named. They were tried under the second, third, fourth and fifth counts of separate indictments, charging them, respectively, with unlawfully transporting ardent spirits in excess of one quart within a period of thirty days (1) into this State, for use in this State, from a point without this State, to the county of Halifax; (2) from one point in this State to another point in this State, to the said county; (3) with unlawfully aiding each other in procuring ardent spirits in said county; and (4) with unlawfully having in possession in said county ardent spirits at a place not their home, to-wit, 145 gallons on the public road near

Clover, in such county. There was a general verdict in each case finding the accused guilty and fixing their punishment, respectively, at a fine of $500.00 and six months confinement in jail. The judgments under review were entered accordingly.

There was a motion to set aside the verdict and for a new trial in each case; but there are only two assignments of error relied upon as sustaining such motions, namely: One based on an alleged improper and prejudicial remark of the attorney for the Commonwealth in his argument before the jury, allowed by the court over the objection of the accused; and the other based on the refusal of the court to give a certain instruction asked for by the accused.

So far as material, the remarks of the attorney for the Commonwealth were as follows:

"The facts of this case are so absolutely conclusive that I am absolutely convinced that even the astute minds of the attorneys for the defense find nothing to rest a reasonable doubt on. I don't see how the facts can be argued any further. That is what I think.

"You will want to consider when you get to your room what amount of punishment should be meted out to this defendant. I stated in this court at the last term, and possibly as you were not here I state it again. I have determined as far as my office is concerned that I shall ask for heavy penalties for violations of the prohibition law. This is the most flagrant violation that I have seen in the 365 days that have rolled around during the past year, and the most flagrant violation which we have tried for months and months. If a light penalty were inflicted, with the hope that they would do better, it would only give them another chance. It would be turning them loose to walk over the people in this county. Yet, he was even willing to kill a man to

get away with 145 gallons of corn whiskey. If the jury don't stand up and put a heavy sentence on him, and their disapproval, the liquor trade will run away with us in Halifax county."

There was no evidence introduced or attempted to be introduced in the case on the subject of the remark that "This is the most flagrant violation that I have seen in the 365 days that have rolled around during the past year, and the most flagrant violation which we have tried for months and months." But the record shows that there was ample evidence to sustain the positions taken by the attorney for the Commonwealth in the other portions of his argument above quoted, to the effect that the accused were both guilty as charged in the indictments and were "willing to kill a man to get away with 145 gallons of corn whiskey." The accused, Seay, driving the automobile containing the liquor, turned and speeded up the car in an attempt to run over the officer who first attempted to stop the car and arrest him, from which the officer narrowly escaped with his life, as he testified as a witness for the Commonwealth. Further: The evidence in the case discloses the additional flagrant features consisting of the flight and escape of the accused, Seay, with the car and its liquor contents, for some distance after his first resistance of arrest; his concealing the car off from the road; the taking of the liquor from the car and hiding it; his appearing at another locality when the officers in pursuit came along; his false swearing as to his identity. And the conduct and false swearing of the accused, Day, as the jury were warranted in believing, were sufficient to show that he was *particeps criminis* with Seay and responsible as a coconspirator for what Seay did.

*M. B. Booker, John W. Carter, Jr.*, and *Hugh T. Williams*, for the plaintiffs in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1, 2] The questions involved will be disposed of in their order as stated below.

1. Did the action of the trial court in permitting the remark of the attorney for the Commonwealth, to the effect that the offense of the accused was the most flagrant he had seen during the past year, and the most flagrant he had tried for months and months, to go to the jury without any instruction of the court cautioning the jury that they were not to allow such remark to influence them in fixing the penalty which might be imposed by their verdict, in the event they found the accused guilty, constitute reversible error?

The question must be answered in the negative.

The accused relies upon *Jessie's Case,* 112 Va. 893, 71 S. E. 612; *Mullin's Case,* 113 Va. 787, 75 S. E. 193, and *McCoy's Case,* 125 Va. 771, 99 S. E. 644, to sustain the position that it was reversible error for the court to permit the remark in question to go to the jury without any caution on the subject. These cases all involve the utilization in argument of matters of fact of which there was no evidence before the jury, but which were very material upon the question of the guilt or innocence of the accused. The instant case involves a mere expression of the opinion of the prosecuting attorney, not upon the guilt or innocence of the accused based upon facts not in evidence, but upon the flagrancy of the offense. And the opinion, when the whole of the remarks of the attorney are read, is plainly a mere state-

ment to the jury of his personal reasons for asking in these cases, as he was asking in all cases of violation of the prohibition law (Laws 1918, c.. 388), for heavy penalties.

He gives reasons which are fully supported by the evidence, and which fully warranted the penalty imposed by the verdicts, which were independent of the flagrancy of the cases, as he considered them, when compared with others he had seen and tried within the period mentioned. And, while we must condemn the remark in question as improper, because immaterial and concerning matters which, not only were not in evidence, but which could not have been properly admitted in evidence, we think, upon consideration of the whole statement of the attorney, that such remark was understood by the jury as stating merely the personal reason of the attorney for asking heavy penalties, and that the jury were asked by him merely to fix the penalty as warranted by the evidence and as authorized by the statute as punishment of the accused for the offenses they had committed and to deter them from committing further like offenses. It would have been better practice if the learned trial judge had stopped the remark before it was completed, or had cautioned the jury on the subject, but we are satisfied that he did not do so for the reason that he felt that under the circumstances of these cases, it would be understood by the jury as just stated and would not mislead them.

On the subject of whether the permission of remarks of counsel, which are objectionable in argument before a jury, constitutes reversible error, this is said in 3 Wigmore on Ev., sec. 1807, p. 2338: "One suggestion  *   * may be useful; namely, that a test may often be made by asking *if it is immaterial for the case in hand whether the specific fact asserted is true or not;* if its truth is thus

immaterial, then its force will lie merely in symbolizing or illustrating a general truth" (as, for example, the comparison which existed in the instant case between the cases being tried and those which were referred to in the remark of the attorney as matters of common, general, public information), "and its employment will be proper. Courts have tried in various phrasings to express the necessary distinction, though not with the clearest success; in the following passages are useful attempts at its exposition: ·

"1881, Elliott, J., in *Combs* v. *State*, 75 Ind. 215, 219; 'One of the attorneys for the prosecution, in addressing the jury, said: "Three or four men have been recently executed at Indianapolis, most of whom set up the plea of insanity;" and of this statement appellant earnestly and bitterly complains. We do not regard such a statement of sufficient materiality to warrant a reversal. Courts ought not to reverse cases because counsel, in the heat of argument, sometimes  *  *  *  * wander a little way outside the record. If a matter of great materiality is brought into the record as a matter of extended comment, then there would be reason for setting aside the verdict. If every immaterial assertion or statement which creeps into an argument were to be held ground for reversal, courts would be so much occupied in criticising the addresses of advocates as to have little time for anything else. Common fairness requires that courts should ascribe to jurors ordinary intelligence, and not to disregard their verdicts because counsel during the argument may have made some general statement not supported by the evidence.  *  *  * It is the duty of the judge who presides at the trial to restrict the argument upon the facts to such as are established by or inferable from the evidence; but, in doing so, it is not his duty to abridge the freedom of the

debate by preventing counsel from enforcing his argument by illustration or example. It is not always easy to draw the line between what is proper and what is improper. Matters of common, general, public information may sometimes be properly referred to, and matters of known and settled history may often be commented upon, with entire propriety; but matters    *    *    * not of common and public notoriety are not properly the subject of comment. To rigidly require counsel to confine themselves directly to the evidence would be a delicate task, both for the trial and the appellate court; and it is far better to commit something to the discretion of the trial court than to attempt to lay down or enforce a general rule defining the precise limits of argument. If counsel make material statements outside of the evidence which are likely to do the accused injury, it should be deemed an abuse of discretion and a case for reversal; but where the statement is a general one, and of a character not likely to prejudice the cause of the accused in the minds of honest men of fair intelligence, the failure of the court to check counsel should not be deemed such an abuse of discretion as to require a reversal.' "

To the same effect, see *Jackson* v. *Commonwealth*, 100 Ky. 239, at p. 267, 38 S. W. 422, 1091, 66 Am. St. Rep. 336; *People* v. *Barthelman*, 120 Cal. 7, at pp. 15-16, 52 Pac. 112; *State* v. *Shores*, 31 W. Va. 491, 7 S. E. 414, 13 Am. St. Rep. 875; *State* v. *Shawen*, 40 W. Va. 1, 20 S. E. 875; *State* v. *Clifford*, 58 W. Va. 681, 687, 52 S. E. 864.

[3-5] 2. Did the court err in refusing the instruction asked for by the accused, mentioned in the statement preceding this opinion?

This question must be answered in the negative.

This instruction is precisely the same as instruction No. 12 refused in *Sims' Case*, in which the opinion of the

court, by Burks, J., was handed down at the November term last of this court, 134 Va. 736, 115 S. E. 382.   In such opinion this is said:

"The instruction might probably, with propriety, have been given, but it embodies principles so well understood by every one and so fully covered by the oath of each juror that its refusal cannot be deemed error.   No juror should ever yield to a conscientious opinion, deliberately formed after a full and fair investigation of the case, as to the guilt or innocence of the accused, but jurors should not be invited to disagree if they can.   When such an instruction is given, the jury should be further instructed that the jury room is no place for pride of opinion or obstinacy, but that it is the duty of the jurors to discuss the evidence in a spirit of fairness and candor with each other, and with open minds, to give careful consideration to the views of their fellows, and, if it can be done without a sacrifice of conscientious convictions, agree upon a verdict. 'By such means and such only, in a body where unanimity is required, can safe and just results be attained, and without them trial by jury, instead of being an essential aid in the administration of justice, would be a most effective obstacle to it.' *Commonwealth* v. *Tuey*, 8 Cush. (Mass.) 1; *Odette* v. *State*, 90 Wis. 258, 62 N. W. 1054; *Jackson* v. *State*, 91 Wis. 253, 64 N. W. 838."

The case will be affirmed.

*Affirmed.*