### KELLY v. STATE.

#### Opinion delivered July 6, 1925.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence of a killing committed in the attempt to perpetrate robbery *held* to sustain a conviction of murder in the first degree, under Crawford & Moses' Dig., § 2343, as against defendant's contention that he slew deceased under a sudden terror aroused by the successful resistance of deceased.

2. CRIMINAL LAW—CORROBORATION OF ACCOMPLICE.—Evidence *held* sufficient to corroborate the testimony of accomplices.

3. HOMICIDE—KILLING IN ATTEMPT TO ROB—VALIDITY OF STATUTE.—Crawford & Moses' Dig., §2343, providing that murder committed in the perpetration of or in the attempt to perpetrate certain crimes shall be deemed murder in the first degree, *held* constitutional.

Appeal from Pulaski Circuit Court, First Division; *John W. Wade*, Judge; affirmed.

*Gus Fulk* and *Martin K. Fulk*, for appellant.

*H. W. Applegate*, Attorney General, and *Darden Moose*, Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted in the criminal district of the circuit court of Pulaski County for murder under § 2343 of Crawford & Moses' Digest, which, omitting immaterial parts, reads as follows:

"All murder which shall be committed * * * in the perpetration of or in the attempt to perpetrate robbery * * * shall be deemed murder in the first degree."

On the trial of the case, appellant was convicted of murder in the first degree, and, as a punishment therefor, was sentenced to death. From the judgment of conviction, an appeal has been duly prosecuted to this court.

Appellant's first and main contention for a reversal of the judgment is that the facts reveal that appellant killed Harrod Fretwell under the influence of a sudden terror aroused by the successful resistance of the deceased, and for that reason was guilty of manslaughter, a crime not included in the indictment. Counsel for the State agree with counsel for appellant that the crime of manslaughter was not embraced within the charge, and that, under the indictment, appellant must have been convicted either of murder in the first degree or acquitted, but do not agree that the record contains any evidence tending to show that appellant was guilty of manslaughter. We agree with the interpretation of the testimony by the State's attorney. According to the testimony, appellant, Alvin Colbert, and A. B. Dean, armed themselves and went to the filling station at Levy, which was in charge of Harrod Fretwell for the purpose of robbing him. Fretwell was asleep in his chair when they entered the door of the filling station. Alvin Colbert, with pistol in hand, entered first. Kelly, with pistol in hand, entered next; and Dean followed him. Colbert placed his pistol against the body of the sleeping boy, and ordered him to throw up his hands. Instead of doing so, the boy, partly aroused, grabbed the barrel of Colbert's pistol; and, while trying to wrench it out of his hand, Kelly, the appellant, shot him. The three men then backed out of the station without committing the robbery, and returned in haste to the car in which they had driven to the station. The car was owned by Roy Colbert, who was driving it. Roy knew nothing about the plan of the three men to rob the filling station. He and his wife were

out driving with the three men and Kelly's wife. They drove out beyond the station several miles and upon their return, after passing the station two or three blocks, Roy stopped to fix one of the spark plugs. While engaged in doing this, the three men went back to the station for the purpose of robbing it. Roy Colbert heard the pistol shot and testified that the men returned to the car four or five minutes after the shot was fired. Immediately after the shooting, three men were seen running out of the filling station, and the deceased made his way to the house of Mr. and Mrs. D. M. Paxon, who lived across the street, where he fell upon his knees saying that he had been shot by an unknown party. Appellant's co-conspirators testified to the plan for robbing the station and to the manner in which and by whom the deceased was killed. Homer M. Adkins, the sheriff, testified that, after arresting appellant, he asked him if he did not do the killing, and that he made the following answer to him: "You have been mighty kind to me, and I am not going to lie to you; if I could go up this afternoon and plead guilty and get life imprisonment, I would do so." We are unable to see in this evidence any indication that Kelly fired the shot through a sense of fear suddenly aroused. It is true that, after he shot the boy, the three men ran out of the station without completing the robbery, but the only reasonable inference is that their hasty departure was due to a fear that they might be detected, in case they remained to complete the act of robbery, by some one who had heard the shot. Kelly made no effort to get away during the struggle for Colbert's pistol, and he had ample opportunity to have done so. It is true that malice is a necessary ingredient of murder, but malice is presumed when the killing results from an attempt to commit a felony, in this case an attempt to commit robbery. There is nothing in the testimony indicating that the malicious intent terminated when the deceased grabbed Colbert's gun. On the contrary, Kelly deliberately shot the boy before he had gotten up out of his chair.

Appellant next contends that the testimony of the accomplices was not sufficiently corroborated to justify his conviction. The testimony of Homer M. Adkins and other pieces of evidence referred to above sufficiently corroborated the testimony of his confederates to warrant the conviction.

Appellant's next and last contention of consequence is that the statute under which appellant was indicted is unconstitutional because its effect is to deprive a defendant of his liberty without due process of law. The argument is made that this statute dispensed with the necessity of proving deliberation, premeditation, and a specific intent to kill in order to convict one charged with murder in the first degree, and that, under the due process clause of the State and Federal Constitutions, one charged with murder in the first degree cannot be convicted without proof of these inherent elements of the crime. We do not understand that the statute has changed or attempted to change any rule of evidence guaranteed by the Constitution as a protection to one charged with the crime of murder in the first degree. The statute does not attempt to deal with the rules of evidence at all. The purpose and intent of the statute was to make a change in the substantive law by making any one guilty of murder in the first degree if he killed another in an attempt to rob him. The Legislature had power to do this under certain limitations unnecessary to mention at this time. 2 Wigmore on Ev., § 1354, p. 1059.

No error appearing, the judgment is affirmed.