STATE OF WEST VIRGINIA

*v.*

WILLIAM M. LEWIS

(No. 10146)

Submitted September 13, 1949. Decided December 22, 1949.

LOVINS, JUDGE, not participating.

*Ernest E. Winters, Jr., Thomas West, Jess Hammock,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *Wm. H. Ansel, Jr.,* Assistant Attorney General, for defendant in error.

HAYMOND, PRESIDENT:

The defendant, William M. Lewis, a practicing physician and surgeon, of Huntington, Cabell County, West Virginia, was jointly indicted with Julia Darling, a nurse, at the June, 1948, term of the Common Pleas Court of that county, for the murder of one Mildred Ferguson. He was tried separately upon the indictment, to which he entered his plea of not guilty and, at that term of court, was found guilty of the crime of murder of the second degree by the verdict of a jury on July 9, 1948. The motion of the defendant to set aside the verdict and grant him a new trial having been overruled, by the judgment entered August 16, 1948, during the same term of court, he was sentenced to a term of imprisonment of from five to eighteen years in the penitentiary of this State at Moundsville. On December 11, 1948, the Circuit Court of Cabell County refused a writ of error to that judgment, and on February 21, 1949, this Court granted this writ of error upon the petition of the defendant.

Mildred Ferguson, an unmarried woman twenty-three years of age, lived with her parents, and two younger sisters, at Narrows, Virginia, where for some time prior to February 24, 1948, she was employed at a celanese plant located about four miles east of that town. In August, 1947, she became acquainted with a young unmarried man, Fred Keffer, twenty-five years of age, and as a result of their intimate association, she became pregnant. Keffer and her sister learned of her condition early in 1948. On February 24, 1948, she worked at the plant from approximately seven o'clock in the morning until four o'clock in the afternoon, and after quitting her work she returned to her home. She then requested a man by the name of

Ball to come to her home to cash her check for $300.00 and she received that amount of money from him. About seven o'clock that evening Keffer arrived in his automobile and he, Mildred Ferguson, and her younger sister, Barbara Ferguson, started on a trip to Huntington for the purpose of calling upon the defendant and having an abortion performed upon Mildred Ferguson. They arrived at Huntington, which is approximately two hundred miles from Narrows, about twelve-thirty o'clock on the morning of February 25, 1948. They ate some food at a restaurant in the city and then went to a tourist camp outside the city where they spent the night together in the same room. Keffer and Mildred Ferguson, without undressing, slept on a bed and Barbara Ferguson occupied a cot near the bed. About six o'clock that morning they ate breakfast in Huntington and then went in the automobile to Twenty-ninth Street in search of the office of the defendant which was located in a building at the corner of that street and Third Avenue in that city. Having ascertained the location of the office, they waited nearby for some time and, about eight-thirty o'clock, Mildred Ferguson and her sister entered the office where they met Julia Darling, the nurse in attendance.

According to the testimony of Keffer, her two sisters and her father, all of whom worked with her at the plant, Mildred Ferguson appeared to be in normal health and good spirits on February 24, 1948, and Keffer and Barbara Ferguson testified that she was in that condition and that frame of mind when, without assistance, she walked into the office of the defendant on the morning of February 25, 1948.

After Mildred Ferguson had been in the office for some time and had been examined by the defendant he told Barbara Ferguson that Mildred Ferguson was in a serious condition and that it was necessary to take her to a hospital. He arranged for her admission to a hospital in Huntington, where she arrived shortly after noon. During the afternoon Dr. H. D. Hatfield, assisted by the defendant,

performed an operation which lasted nearly two hours. Mildred Ferguson did not recover from the operation and shortly after ten o'clock that night she died at the hospital. Dr. Hatfield testified that her death was caused by shock and that she would have died had there been no operation. Her body was taken to Narrows, Virginia, where it was interred on February 28, 1948. Later the body was disinterred and, on March 29, 1948, an autopsy was performed by a doctor who testified at the trial.

As to the events which occurred when Mildred Ferguson entered the defendant's office, and while she remained there during the morning of February 25, 1948, and the exact time of their occurrence, the evidence in conflicting.

The evidence introduced by the State is that after Mildred Ferguson and her sister entered the office of the defendant, she went with Julia Darling, about nine o'clock that morning, into his inner office, leaving her sister in an outer room. Shortly afterwards Julia Darling came to that room and told the sister that Mildred Ferguson wanted her purse, which then contained $297.00 of the $300.00 which she had received from Ball. Julia Darling took the purse and went to the inner office. Afterwards she returned to the outer room and informed Barbara Ferguson that Mildred Ferguson wanted to see her. Barbara Ferguson then went to the inner office and Mildred Ferguson asked for a five dollar bill, which Barbara Ferguson gave her. At that time Mildred Ferguson, partly undressed, was seated on a chair. She was smiling and in good spirits. After leaving her sister, Barbara Ferguson went to the automobile nearby in which Keffer had been waiting and they rode through the business section of the city and visited some stores. Between eleven-thirty and twelve o'clock noon they returned to a point near the defendant's office and, while they were there, the defendant came to the automobile, asked Barbara Ferguson to come into the office, and there told her that Mildred Ferguson was in a serious condition, that she had lost a large quantity of blood, and that an immediate operation was necessary.

He also informed her that he had arranged to have Mildred Ferguson admitted to a hospital for that purpose.

The evidence in behalf of the defendant which bears upon the foregoing events and which consisted principally of the testimony of the defendant and Julia Darling is that the defendant first saw Mildred Ferguson about eleven o'clock on the morning of February 25, 1948, when she was brought into his office by his nurse, Julia Darling, who had to assist her when she walked. At that time Mildred Ferguson was pale, bent over and holding her lower abdomen. She told the defendant that she had been treated by another doctor to produce an abortion, who had given her some injections of medicine, probed the inside of her womb, and told her she was all right; that she decided to perform an abortion herself and that she attempted to do so by the use of a knitting needle or some long apparatus. He gave her a preliminary examination and found that she had a rapid pulse and a temperature of 102.8 degrees. She was assisted to another room for further examination but was unable to submit to it until she was given a "partial anesthesia". The defendant then examined her and found that her uterus was filled with blood, that it was severly injured and that it appeared to have been punctured. The defendant told her that it was necessary for her to enter a hospital for emergency treatment. He demanded a fee of $150.00 for his services in treating her and requested and was paid the sum of $300.00 to cover his fee and the necessary expenses of the treatment. The defendant denied that Mildred Ferguson was pregnant at the time or that he performed an abortion on her. After the defendant had completed his examination of Mildred Ferguson and ascertained the seriousness of her condition, he communicated by telephone with Dr. Hatfield, made arrangements for the operation, sent her to the hospital in an ambulance, and went to the hospital almost immediately after her arrival there.

Dr. Hatfield, who testified as a witness for the State, described in detail the operation which he performed on Mildred Ferguson, in which the defendant assisted; her

condition when he examined her and during the operation; and the character and the location of her injuries. He found a large hole in the top of the uterus and that the entire front of the uterus was torn out and bleeding. There was a puncture wound on the front surface of her uterus which extended to the location of the uterine vessels. There was a hole in the ileum, or small intestine, about one and one-half or two feet from its junction with the caecum, which is the sac in which the large intestine begins. The ileum was torn apart and about four inches of this small intestine was severed and removed in the operation. There was an opening in the small intestine about six or eight inches from the stomach and another opening in the sigmoid which is that part of the large intestine between the colon and the rectum. There was also a hole in the omentum, which is an apron like substance that hangs over and protects the intestines. Her uterus was not greatly enlarged and Dr. Hatfield stated that if Mildred Ferguson was pregnant her pregnancy was not of long duration and that he could not say that she was or was not pregnant. Another doctor who, on March 29, 1948, performed an autopsy after the body of Mildred Ferguson had been exhumed, testified that she had received the injuries described by Dr. Hatfield, that she had been pregnant and that her uterine cavity appeared to have been scraped with a sharp instrument.

The defendant assigns many errors. The substance of the numerous assignments is the erroneous action of the trial court: (1) in overruling the demurrer and the motion to quash the indictment; (2) in permitting the introduction of the evidence of an abortion under the allegations of the indictment; (3) in overruling the motion of the defendant to direct the jury to return a verdict of not guilty; (4) in permitting certain witnesses to testify to other alleged abortions performed by the defendant upon other persons; (5) in permitting certain incomplete hypothetical questions to be propounded to and answered by witnesses who testified in behalf of the State; (6) in giving instructions Nos. 1, 2, 4 and 5, offered by the State; (7) in

refusing instructions Nos. A, AB, 2, in its original form, 4, 4B, 4D, 4E, 5, 6, 7, 8, 9 and 12 offered by the defendant; (8) in refusing to permit counsel for the defendant to explain to the jury the elements constituting the various degrees that could be found under the indictment and particularly that malice is an essential element of the crime of murder; and (9) in permitting the prosecuting attorney to engage in improper and prejudicial statements concerning the defendant in his opening statement, during the progress of the trial, and in his closing argument to the jury.

The defendant insists that the indictment is fatally defective as an indictment for murder committed by means of an abortion because it fails to state the elements of the crime of abortion and that the abortion caused the death of Mildred Ferguson. The contention is, that because of this omission, the indictment does not satisfy the requirement of Section 14, Article III of the Constitution of this State, which provides that in all trials of crimes and misdemeanors the accused shall be fully and plainly informed of the character and cause of the accusation. This contention is not tenable. The charge of the indictment follows the statutory form of an indictment for murder and contains this language: "That William M. Lewis and Julia Darling on the 25th day of February, 1948, in the said County of Cabell, feloniously, wilfully, maliciously, deliberately and unlawfully did slay and kill and murder one Mildred Ferguson, against the peace and dignity of the State." See Code, 1931, 62-9-3. Under an indictment for murder, in the statutory form it is unnecessary to set out the mode of the killing and the State may prove any mode or manner in which the murder was committed. *State* v. *Morgan,* 35 W. Va. 260, 13 S. E. 385.

In *State* v. *Schnelle,* 24 W. Va. 767, the indictment charged that the defendant, at a specified time and place, "feloniously, wilfully, maliciously, deliberately, and unlawfully, did slay, kill and murder one Guenther Schuchardt against the peace and dignity of the State." In the *Schnelle* case it was argued, as it is argued here, that these

words, without stating the means of the killing, did not fully and plainly inform the defendant of the character and cause of the accusation against him. In referring to the defendant in that case the Court said: "How could he be any more *fully* and *plainly* informed of the character and cause of the accusation against him? Would he have been any better informed thereof if the indictment had contained all the sickening details of how he had mutilated him, with what instrument, and the length and depth of the wound inflicted, and that Schuchardt languished from the effects thereof, and from said wounds died? \* \* \* He knew by this indictment, that he was charged with the *murder* of Guenther Schuchardt. He knew just as well how to defend himself against that terrible charge from the information in this indictment, as if it had given all the details of the killing. If convicted or acquitted of the charge, he could as well hereafter plead a former conviction or acquittal, as if the indictment had in the fullest manner given all details of the killing. The *character* and *cause* of the accusation, are entirely distinct from the mode or manner of the killing. While the Constitution declares that he shall be *fully* and *plainly* informed of the character and cause of the accusation, it does not require that he shall be *fully* and *plainly* informed of the mode, or manner by or in which the crime was committed." The crime charged in the indictment is murder, not the crime of abortion; and the crime for which the defendant was indicted and convicted is murder by force of the statute which provides that if any woman die, by reason of an abortion, performed upon her, by any person, as described and made a felony by the statute, such person shall be guilty of murder. Code, 1931, 61-2-8.

The defendant cites and relies upon the case of *Scott v. Harshbarger*, 116 W. Va. 300, 180 S. E. 187, in support of his contention that the indictment in this case is fatally defective. In the *Scott* case, a habeas corpus proceeding involving the validity of a conviction of the crime of abortion upon a void indictment, this Court held that an indictment, based upon a form prescribed by statute, which

omits to charge one of the material elements of an offense as defined by statute, is void. The indictment condemned in the *Scott* case was for the statutory crime of abortion, not for the crime of murder, and notwithstanding the form of indictment prescribed by statute for the crime of abortion, the failure of the indictment to charge an essential element of that offense rendered the indictment void. In condemning the indictment assailed in that case this Court merely followed and applied the well established rule that an indictment which fails to allege an essential element of the offense is fatally defective. See *State* v. *Harrison*, 130 W. Va. 264, 43 S. E. 2d 214; *State* v. *Wohlmouth*, 78 W. Va. 404, 89 S. E. 7. In consequence, the holding in that case is distinguished from the case at bar and does not apply to the indictment in this case. The statutory crime of abortion is not murder but a separate and distinct offense; and it is only when the woman dies by reason of an unlawful abortion that the crime of murder is committed. The abortion is merely the means by which the murder is accomplished. The statute relating to murder expressly provides that in an indictment for murder it shall not be necessary to set forth the manner in which, or the means by which, the death of the deceased was caused, but it shall be sufficient in every such indictment to charge that the defendant did feloniously, wilfully, maliciously, deliberately and unlawfully slay, kill and murder the deceased. Code, 1931, 61-2-1. Under the statutes already referred to, Code, 1931, 61-2-1 and 62-9-3, the indictment in this case is sufficient, and the demurrer and the motion to quash were properly overruled.

As it was not necessary that the indictment should state the elements of the crime of abortion or that Mildred Ferguson died by reason of an unlawful abortion performed upon her by the defendant, there is no merit in the contention of the defendant that there was a fatal variance between the allegations of the indictment and the evidence introduced by the State to prove the crime charged against him. See *State* v. *Morgan*, 35 W. Va. 260, 13 S. E. 385.

The evidence that the defendant performed an unlawful abortion upon Mildred Ferguson and that she died by reason of such abortion is sufficient to establish the guilt of the defendant beyond all reasonable doubt and it amply supports the verdict of the jury. That Mildred Ferguson was pregnant, that she was in normal health and in good spirits when she left the home of her parents in Narrows, Virginia, and made a trip of two hundred miles to Huntington to have an abortion performed by the defendant, is clear and convincing and is supported by many facts and circumstances in the case. She had worked at the plant from about seven o'clock in the morning until four o'clock in the afternoon of the day before her death and after returning to her home from her work she was able to make a two hundred mile trip by automobile at night from Narrows to Huntington. It is difficult to believe, and it is obvious that the jury did not believe, that she was in the condition in which the defendant and Julia Darling say they found her when she came to the office of the defendant, at any time before her arrival there. Dr. Hatfield, who performed the hopeless operation in an effort to save her life, indicated that he did not believe that she could have entered the office of the defendant in her wounded condition without assistance. As Barbara Ferguson and Fred Keffer positively testified that she walked unassisted into the office, their testimony and the undisputed evidence of her previous good health indicate strongly that she had not been wounded internally at that time.

The statement of the defendant that she told him that another doctor had given her injections of medicine and probed her womb and that she had performed the abortion is wholly at variance with other clearly established facts and circumstances which appear from the evidence. The evidence showed that the doctor in question had never seen or treated Mildred Ferguson. It is also unreasonable to conclude that Mildred Ferguson, who obtained $300.00 for the purpose of having an abortion performed upon her by a doctor and who paid that amount of money to the

defendant, would have traveled two hundred miles from her home in Narrows to Huntington and upon her arrival there attempt an abortion upon herself. The testimony of Barbara Ferguson and Fred Keffer, who were with her constantly from the time she left Narrows until she entered the office of the defendant, indicates that she did not attempt to perform an abortion and had no instrument such as a crochet needle which she could use for that purpose. The evidence of Dr. Hatfield discloses that in his opinion the internal intestinal injuries which he found and from which Mildred Ferguson was suffering could not have been self inflicted by a knitting needle or an ordinary curette. A woman who rented to Fred Keffer the room in which he, Mildred Ferguson and Barbara Ferguson together spent the night of their arrival in Huntington testified that she found a large quantity of blood in the bed occupied by Mildred Ferguson and Fred Keffer. Her testimony, however, was impeached by her prior inconsistent statements and by other evidence, and it is obvious that the jury did not believe her account of the presence of blood in the bed.

The evidence introduced by the State was sufficient to establish the *corpus delicti* and to justify the jury in believing beyond a reasonable doubt that Mildred Ferguson was pregnant; that she went to the defendant to get him to perform an abortion upon her; that he performed the abortion for a fee of $300.00, paid by her and accepted by him; that the defendant did not act in good faith or with the intention of saving her life; that in performing the abortion he inflicted the wounds which caused her death; and that she died by reason of the abortion. In short, the evidence is sufficient to lead the jury to believe, beyond a reasonable doubt, that the defendant was guilty of the crime of murder and to justify his conviction of that offense; and that finding of the jury will not be disturbed by this Court. "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond

a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." *State* v. *Bowles*, 117 W. Va. 217, 185 S. E. 205; *State* v. *Reppert*, 132 W. Va. 675, 52 S. E. 2d 820; *State* v. *Hacker*, 130 W. Va. 91, 42 S. E. 2d 559. See also *State* v. *Taylor*, 130 W. Va. 74, 42 S. E. 2d 549; *State* v. *Holmes*, 125 W. Va. 97, 23 S. E. 2d 61; *State* v. *Gunter*, 123 W. Va. 569, 17 S. E. 2d 46; *State* v. *Barkoski*, 96 W. Va. 265, 122 S. E. 654; *State* v. *Price*, 94 W. Va. 644, 119 S. E. 874; *State* v. *McLaughlin*, 91 W. Va. 654, 114 S. E. 278; *State* v. *Cook*, 81 W. Va. 686, 95 S. E. 792; *State* v. *Henry*, 51 W. Va. 283, 41 S. E. 439.

The defendant complains of the action of the trial court in permitting two witnesses produced by the prosecution to testify to other abortions performed or attempted by the defendant on other women in the years 1943, 1944 and 1946, on the ground that such offenses were not related to the offense for which the defendant was tried. As a general rule, the State, in a criminal case, may not offer proof of a substantive offense not in any way connected with the specific offense charged. *State* v. *Hudson*, 128 W. Va. 655, 37 S. E. 2d 553, 163 A. L. R. 1265; *State* v. *Craig*, 131 W. Va. 714, 51 S. E. 2d 283; *State* v. *Light*, 127 W. Va. 169, 31 S. E. 2d 841; *Watts* v. *State*, 5 W. Va. 532. To the general rule, however, there are important and well defined exceptions; and within the scope of those exceptions, proof of another offense committed by the accused is admissible when such offense has some logical connection with, and tends to establish, the commission of the specific offense with which the defendant is charged. *State* v. *Hudson*, 128 W. Va. 655, 37 S. E. 2d 553, 163 A. L. R. 1265; *State* v. *Geene*, 122 W. Va. 51, 7 S. E. 2d 90; *State* v. *Smith*, 117 W. Va. 598, 186 S. E. 621; *State* v. *Leatherwood*, 112 W. Va. 339, 164 S. E. 295; *State* v. *Camp*, 110 W. Va. 444, 158 S. E. 664; *State* v. *Adkins*, 109 W. Va. 579, 155 S. E. 669; *State* v. *Rush*, 108 W. Va. 254, 150 S. E.

740; *State* v. *Johnson,* 105 W. Va. 598, 143 S. E. 352. Under these cases evidence of other crimes chargeable to the defendant may be relevant, upon the trial of a specific offense, to show motive or intent when such other crimes are similar in character and near in point of time to the specific offense charged and indicate that such specific offense is a part of a system of criminal action. In *People* v. *Davis,* 362 Ill. 417, 200 N. E. 334, the opinion uses this language: "In cases of murder by abortion the prosecution may show the commission of like offenses to prove criminal intent. *People* v. *Rongetti,* 338 Ill. 56; *People* v. *Hobbs, supra; People* v. *Hagenow,* 236 Ill. 514." The evidence of the other offenses chargeable to the defendant showed that they were similar in character to the abortion which the State asserts the defendant performed upon Mildred Ferguson and they indicate a systematic course of criminal conduct. This evidence was within the scope of the exceptions to the general rule and was relevant for the purpose of showing the criminal intent of the defendant to perform an abortion upon Mildred Ferguson. *Clark* v. *People,* 224 Ill. 554, 79 N. E. 941; *State* v. *Durkee,* 68 R. I. 73, 26 A. 2d 604. Whether these prior offenses were too remote in time to be admissible in evidence is a question for the trial court in the exercise of a sound discretion, and its action in excluding or admitting evidence of such offenses will not be disturbed unless it appears that such action amounts to an abuse of discretion. *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410. No abuse of discretion appears and the action of the trial court in admitting the evidence will not be disturbed by this Court.

The defendant contends that it was reversible error for the trial court to permit two doctors produced by the State to answer incomplete hypothetical questions propounded to them by the prosecuting attorney upon the trial of the case. The questions to which the defendant objected did not contain a full statement of the facts relied on by the State, but the defendant did not point out any omitted facts or did not undertake to develop or supply them by cross examination of these witnesses, who testified as experts having no personal knowledge of the occurrence of

the facts contained in the questions. The rule recognized by the decisions of this Court is that when a hypothetical question is objected to on the ground that it does not contain a full statement of the facts relied on, and the omitted facts are not pointed out in the objection, the only remedy of the objector is to develop the omitted facts on cross examination and elicit the opinion of the witness when those facts are supplied. *Hazelrigs* v. *City of Huntington,* 116 W. Va. 757, 182 S. E. 877; *Byrd* v. *Virginian Railway Company,* 123 W. Va. 47, 13 S. E. 2d 273; *Adams* v. *G. C. Murphy Company,* 115 W. Va. 122, 174 S. E. 794; *Keenan* v. *Scott,* 78 W. Va. 729, 90 S. E. 331. A hypothetical question need not cover all the facts but the party propounding the question may assume facts fairly inferable from the evidence which tends to support his theory of the case. *Byrd* v. *Virginian Railway Company,* 123 W. Va. 47, 13 S. E. 2d 273; *Fairview Fruit Company* v. *Brydon & Brother,* 85 W. Va. 609, 102 S. E. 231; *State* v. *Angelina,* 73 W. Va. 146, 80 S. E. 141, 51 L. R. A. (N. S.) 877; *State* v. *Cook,* 69 W. Va. 717, 72 S. E. 1025; *Bowen* v. *City of Huntington,* 35 W. Va. 682, 14 S. E. 217. The questions propounded were permissible and the answers elicted by them were properly admitted as evidence.

Of the five instructions offered by the State the trial court gave Instructions 1, 2, 4 and 5, all of which were objected to by the defendant, and refused Instruction 3.

Instruction 1 informed the jury that, if warranted by the evidence, the jury could find, under the law, one of these four verdicts: (1) murder of the second degree; (2) voluntary manslaughter; (3) involuntary manslaughter; and (4) not guilty, and explained the punishment imposed by law for each of the designated offenses. The instruction was erroneous but the error was in favor of the defendant. In effect the statute declares that any person who performs an unlawful abortion which results in the death of the woman is guilty of murder. Code, 1931, 61-2-8. It expressly provides that the offense is murder; therefore it is not manslaughter. Under the evidence the only offense of which the defendant could properly have

been found guilty was the crime of murder of the second degree, and only one proper verdict, guilty or not guilty, could have been rendered. In *State* v. *Stephenson,* 114 W. Va. 458, 172 S. E. 533, this Court held that in a trial for murder, if the evidence does not warrant any conclusion other than that of murder in the first degree, an instruction relating to a lesser grade of the offense charged need not be given. In the Virginia case of *Thornton* v. *Commonwealth,* 24 Gratt. 657, cited and quoted from with approval in the *Stephenson* case, the defendant was charged with murder by poison, and in the opinion the Court said: "The charge was murder in the first degree by poison. The prisoner was either guilty of that offense or guilty of no offense at all. The law expressly declares murder by poison to be murder of the first degree. And if the prisoner was guilty of the murder as charged in the indictment, she must of necessity have been guilty of murder in the first degree. She could, by possibility, have been guilty of nothing else. And it could not, therefore, have been erroneous to charge the jury to that effect. To have charged them as to what constituted murder in the second degree, or voluntary or involuntary manslaughter, or as to the measurement of punishment of each, could have answered no good purpose, and could have had no other effect, if any, than to confuse the jury or mislead them into error." Here, as in the *Thornton* case, under the evidence the defendant could have been guilty of only the one specific offense for which he was tried. Under the statute the offense is murder and under the evidence the defendant could of necessity have been found guilty of no offense other than that of murder of the second degree which is all murder other than murder of the first degree. See Code, 1931, 61-2-1. The error in the instruction, as already indicated, was not harmful to the defendant and, therefore, not prejudicial. The rule of harmless error is that a verdict will not be set aside because of error committed by the trial court unless the error is harmful to the complaining party. *State* v. *Taylor,* 130 W. Va. 74, 42 S. E. 2d 549; *State* v. *Smith,* 119 W. Va. 347, 193 S. E. 573; *State* v. *Rush,* 108 W. Va. 254, 150 S. E. 740.

Instruction 2 told the jury in substance that if the jury believed from the evidence beyond a reasonable doubt that Mildred Ferguson, being pregnant, went to the office of the defendant and requested or consented that an abortion be performed; that the defendant used any means with intent to destroy her unborn child, or to produce abortion or miscarriage; that he did by such means destroy such child or produce such abortion or miscarriage; that such act was not done in good faith with the intention of saving her life or her child; and that she died as a result of such abortion, the jury should find the defendant guilty as charged in the indictment. This instruction is based upon the statute, Code, 1931, 61-2-8. It correctly states the law applicable to the facts in evidence, and the trial court did not err in giving it.

Instruction 4 dealt with reasonable doubt. It correctly states the law on that subject and to give it was not error. *State* v. *Humphreys,* 128 W. Va. 370, 36 S. E. 2d 469; *State* v. *Joseph,* 100 W. Va. 213, 130 S. E. 451.

Instruction 5 was proper. It merely told the jury that no instruction or remark of the court was to be considered as intimating an opinion as to the evidence or the facts. *State* v. *Detwiler,* 60 W. Va. 583, 55 S. E. 654.

The trial court refused to give these instructions offered by the defendant: A, AB, 2, in its original form, 4, 4B, 4D, 4E, 5, 6, 7, 8, 9 and 12.

Instruction A was a peremptory instruction and would have directed the jury to find the defendant not guilty. It was properly refused for the reasons already stated in dealing with the action of the trial court in refusing to direct a verdict of not guilty.

Instruction AB contained the statement that under the evidence the jury could not find the defendant guilty of any higher offense than involuntary manslaughter. As heretofore pointed out the statute, Code, 1931, 61-2-8, makes the offense for which the defendant was tried murder, not manslaughter. In this respect the instruction was

contrary to the provisions of the statute and it was properly refused.

The substance of Instruction 2, in its original form, was that the burden was upon the State to prove, beyond a reasonable doubt, that at the time of the alleged abortion Mildred Ferguson was pregnant, that the defendant unlawfully and feloniously caused the death of her child and incidentally caused the death of Mildred Ferguson, and that, unless the jury should believe, "and have an abiding conviction, to a moral certainty," beyond a reasonable doubt, that the defendant "wilfully and intentionally" caused the death of the child and incidentally the death of Mildred Ferguson, "known to the defendant at the time that such abortion was unnecessary in order to save" her life, the jury should find the defendant not guilty. The trial court modified the instruction by eliminating the words "and have an abiding conviction, to a moral certainty," "wilfully and intentionally" and substituting the words "by such operation" and by eliminating the words "known to" and substituting the word "knowing"; and gave the instruction as modified. In giving the instruction as modified the trial court did not commit error. The words "wilfully and intentionally" would have told the jury and required the jury to believe that the defendant must have wilfully and intentionally caused both the death of the child and the death of the mother. In order to commit the offense of abortion it is not necessary that the person who performs it should intend to cause the death of the woman. Imposition of that requirement would emasculate and defeat the plain purpose of the statute for rarely, if ever, does the person who intentionally performs the abortion intend to cause the death of the woman. The only intent necessary to be established to convict an accused of the crime of abortion is "the intent to commit a criminal abortion; that is, an abortion for a purpose other than that to preserve the life of the mother." *People* v. *Hobbs*, 297 Ill. 399, 130 N. E. 779; *People* v. *Davis*, 362 Ill. 417, 200 N. E. 334. "An unintended homicide, committed by one who at the time is engaged in the commission of some other felony, is murder both at common law and under the statutes de-

claratory thereof, even though the statute requires a premeditated design to effect death as a requisite of murder. \* \* \* The general rule under discussion applies, for example, to an unintended homicide committed by one who was at the time engaged in committing an unlawful abortion, where this has been made a felony by statute; and under some statutes a homicide committed in procuring an abortion is expressly declared to be murder." 40 C. J. S., Homicide, Section 21. "Under some statutes, in case death of the woman results, the crime is expressly made murder; and if the production of a criminal abortion is made a felony by statute, it will be murder if the death of the woman ensues." 1 Am. Jur., Abortion, Section 21. The substitution of the words "by such operation" for the words "wilfully and intentionally" in their application to the cause of the death of the child and of the mother satisfied the requirement of the statute and was correct and proper. The other modifications of the instruction were unimportant and were not prejudicial to any right of the defendant.

Instruction 4 related to circumstantial evidence. It consisted of several separate paragraphs which were designated as 4, 4A, 4B, 4C, 4D and 4E. The trial court gave 4A and 4C and refused 4, 4B, 4D and 4E. The entire instruction was lengthy, and contained repetitious paragraphs. Its terminology was abstract and involved. The portions given sufficiently and correctly instructed the jury concerning circumstantial evidence and the requirements of that type of evidence to warrant conviction of the accused in a criminal proceeding. It satisfied those requirements and did not disregard or prejudice any right of the defendant. The portions refused were abstract and involved. They were also repetitious of the substance of other instructions which were given. For these reasons the trial court did not commit error in refusing to give the instruction in its entirety.

Instruction 5 dealt with the pregnancy of Mildred Ferguson at the time she entered the office of the defendant. It was based on the assumption that the elements of an unlawful abortion should have been alleged in the indict-

ment and would have told the jury that the State was required to prove beyond a reasonable doubt that Mildred Ferguson, at that time, was pregnant with child capable of being destroyed "in manner and form alleged in the indictment," before the defendant could be convicted of the offense charged against him. As already pointed out, no allegation of her pregnancy was required in an indictment for murder, the crime with which the defendant was charged. For that reason the instruction was erroneous and was properly refused.

Instruction 7 in its original form would have informed the jury that the defendant had the right to testify in his own behalf and that the jury could not arbitrarily disregard or disbelieve his evidence, but that the jury should weigh and consider his testimony as any other witness in the case. The instruction would also have told the jury that "in considering the evidence in this case, the testimony of the accused and his witnesses should be accepted as true, unless contradicted by other and better evidence, or by impelling circumstances appearing in the case." The quoted portion of the instruction was stricken by the trial court and the instruction, with that part omitted, was given. The eliminated portion of the instruction was manifestly erroneous and the action of the trial court in giving the instruction as modified and refusing it in its original form did not constitute error.

Instructions 6, 8, 9 and 12 related to reasonable doubt and the presumption of the innocence of the accused. Their substance was sufficiently covered by Instruction 4, given in behalf of the State, and Instructions 1, 11, and 14, given in behalf of the defendant. For this reason they were properly refused. *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553, 163 A. L. R. 1265; *State* v. *Humphreys,* 128 W. Va. 370, 36 S. E. 2d 469; *Robertson* v. *Hobson,* 114 W. Va. 236, 171 S. E. 745; *State* v. *Vineyard,* 85 W. Va. 293, 101 S. E. 440. "Instructions must be considered together as a whole, and if one instruction has been given fully covering a principle of law applicable to the case, it is not error to refuse other instructions to the same effect, although differently expressed." *State* v. *Beale,* 104 W. Va. 617, 141 S. E. 7.

The contentions of the defendant that counsel should have been permitted to explain to the jury the elements constituting the various degrees of homicide of which the defendant could be convicted under the indictment and that it was necessary for the State to prove malice in order to convict the defendant of murder for the death of Mildred Ferguson as a result of an unlawful abortion are not well founded.

An unintended homicide, committed by a person engaged at the time in the commission of some other felony, has been held to be murder both at common law and under a declaratory statute; and a person who commits an unintended homicide when engaged in committing an unlawful abortion, made a felony by statute, or who performs an abortion which causes the death of the woman, when the death so caused is by statute declared to be murder, is guilty of murder. 40 C. J. S., Homicide, Section 21.

An instruction that the jury may convict the defendant of manslaughter is properly refused when the evidence shows that the death of the woman resulted from an abortion. *People* v. *Balkwell,* 143 Cal. 259, 76 P. 1017. In the leading case of *Johnson* v. *People,* 33 Colo. 224, 80 P. 133, 108 Am. St. Rep. 85, the Supreme Court of Colorado held that, under a statute which provides that any person who shall administer certain specified treatment, with the intention to procure the miscarriage of any woman then being pregnant with child, shall be imprisoned in the penitentiary for a term not to exceed three years and fined not to exceed $1,000.00, and that, if any woman die, by reason of such treatment, the person administering it shall be deemed guilty of murder, a person who caused the death of a pregnant woman by administering the prescribed treatment was guilty of murder of the second degree; and that, as no element of manslaughter was present, the refusal of the trial court to instruct the jury as to the law of manslaughter was proper. See also *Kinsey* v. *State,* 49 Ariz. 201, 65 P. 2d 1141, 125 A. L. R. 3.

Malice, express or implied, is a necessary element of murder in the second degree. *State* v. *Roush,* 95 W. Va.

132, 120 S. E. 304; *State* v. *Cassim,* 112 W. Va. 92, 163 S. E. 769. Some cases in other jurisdictions hold that the unintended death of a woman which results from an unlawful abortion is murder at common law and that the essential element of malice in the commission of the homicide is implied from the commission of the abortion. See *State of Kansas* v. *Harris,* 90 Kan. 807, 136 P. 264, 49 L. R. A. (N. S.) 580. In that case, numerous cases and text authorities to the effect that homicide which results from the death of a woman caused by an unlawful abortion is murder at common law and cases which hold that such homicide is manslaughter at common law, are mentioned and discussed. In *State* v. *Moore,* 25 Iowa 128, 95 Am. Dec. 776, cited in *State of Kansas* v. *Harris,* 90 Kan. 807, 136 P. 264, 49 L. R. A. (N. S.) 580, the Court held that the use of medicines and instruments for the purpose of procuring an abortion which resulted in the unintentional death of the woman was murder. In the opinion in that case the Court said: "In cases of homicide, the settled doctrine of the common law is, that malice may be implied from unlawful acts dangerous to life, committed without lawful justification", and that "If death unexpectedly results from such an act, the crime we have seen, was at common law murder, and under our statute is murder in the second degree." See also *People* v. *Sessions,* 58 Mich. 594, 26 N. W. 291; *State* v. *Dickinson,* 41 Wis. 299, 2 Am. Crim. Reps. 1. In *People* v. *Balkwell,* 143 Cal. 259, 76 P. 1017, in which the defendant was convicted of murder of the second degree for the death of a woman, which resulted from an illegal abortion performed upon her by the defendant, the Supreme Court of California uses this language: "Malice aforethought, either express or implied, is manifested by the doing of an unlawful and felonious act intentionally and without legal cause or excuse. It does not imply a pre-existing hatred or enmity toward the individual injured."

By Code, 1931, 61-2-1, which was embodied in Section 1, Chapter 144, Code of 1923, murder by poison, lying in wait, imprisonment, starving, or by any wilful, deliberate and premeditated killing, or in the commission of, or

attempt to commit, arson, rape, robbery or burglary, is murder of the first degree. Under that statute a person who kills another person, in committing or attempting to commit robbery, with no motive for the homicide other than robbery, is guilty of first degree murder. *State* v. *Williams,* 98 W. Va. 458, 127 S. E. 320. In that case this Court, in denying the contention of the defendant that the burden was on the State to prove beyond all reasonable doubt malice, express or implied, before the defendant could be convicted of murder of the first or second degree, said in point 3 of the syllabus: "Under section one of chapter one hundred and forty-four of the Code of West Virginia, which makes murder in the commission or in the attempt to commit a particular felony, such as robbery, murder in the first degree, the law will supply the necessary intent and malice in homicides coming within the provisions of the statute and conviction may be had although no previous intent to kill is shown, or it appears that there was no such intent, nor is it necessary to show deliberation, wilfulness or premeditation. *Held:* It is not error to refuse the giving of an instruction telling the jury that the burden is upon the state to prove beyond all reasonable doubt, malice, express or implied, before they can convict for murder in the first degree." See also *State* v. *Beale,* 104 W. Va. 617, 141 S. E. 7. As to malice in the commission of an unintended homicide by the defendant while engaged in the commission of a felony, see *Commonwealth of Massachusetts* v. *Madeiros,* 255 Mass. 304, 151 N. E. 297, 47 A. L. R. 962; *Kelly* v. *State,* 169 Ark. 289, 273 S. W. 11; *People* v. *Sullivan,* 173 N. Y. 122, 65 N. E. 989, 63 L. R. A. 353, Note 111, paragraph a, page 354, and paragraph g, page 372, 93 Am. St. Rep. 582.

The foregoing principle, stated and applied in the *Williams* case, is applicable, in logic and in law, to the case at bar. By the statute, Code, 1931, 61-2-8, the death of the woman as a result of a criminal abortion, a felony, is murder. When the commission of the abortion and the resultant death of the woman are proved beyond a reasonable doubt, the law supplies the necessary intent and malice in the commission of the homicide caused by the

abortion and makes such homicide, though unintended, murder. In consequence, it was not necessary for the State to prove that the defendant in causing the death of Mildred Ferguson, by reason of the abortion, was actuated by malice.

In his opening statement to the jury, in his examination of witnesses, and in his closing argument to the jury, the prosecuting attorney made certain remarks, in referring to the defendant and some of the witnesses who testified in his behalf, which, the defendant contends, constitute prejudicial error. In his opening statement, in which he expressly told the jury that his remarks should not be considered as evidence, the prosecuting attorney referred to the defendant as an abortionist and told the jury that there would be testimony of other persons who came to "this abortion mill" at Huntington for the purpose of having illegal abortions performed. These remarks were made in the concluding portion of his statement. They were not immediately objected to by the defendant. After the prosecuting attorney had completed his opening statement, however, the defendant objected to those utterances and moved the court to direct the jury to disregard them as improper; but this objection was overruled by the trial court.

During his examination of witnesses the prosecuting attorney several times referred to the defendant as an abortionist, and his treatment of Mildred Ferguson as an abortion and as an illegal abortion. Only three of these statements were objected to by the defendant and in each instance his objection was sustained. He also incorporated in one of the questions propounded on cross examination the statement that Mildred Ferguson was murdered. To this statement the defendant objected. The objection was sustained and the court instructed the jury not to consider the word murder.

In his closing argument to the jury the prosecuting attorney made four references to the defendant as an abortionist. The first three were not objected to by the defendant. The fourth reference was objected to and the

court sustained the objection and instructed the prosecuting attorney not to use that word. The prosecuting attorney then said: "Well, he is a debaucher anyway. Mr. Hammock called poor Fred Keffer a debaucher, a seducer. I will point my finger at one man and ask Mr. Hammock what he is, if he isn't a seducer, a debaucher, and a butcher. That is what he is, a butcher." The defendant did not object to these statements. The prosecuting attorney also referred to a doctor who testified in behalf of the defendant as a witness who testifies for abortionists and as an abortionist witness. The first reference was objected to but the objection was not ruled upon by the court. There was no objection to the second reference. The prosecuting attorney also stated that Mildred Ferguson was murdered; but no objection was made to that remark.

It should be observed that as to all the statements of the character indicated, of which counsel for the defendant complain in their briefs, only four such statements which involved the word "abortionist" were objected to. One objection was not ruled upon, two objections were sustained, and one objection was overruled. In order to take advantage of remarks considered improper they must be objected to and counsel must request the court to instruct the jury to disregard them. *Gilkerson* v. *Baltimore & Ohio Railroad Co.*, 132 W. Va. 133, 51 S. E. 2d 767; *State* v. *Files*, 125 W. Va. 243, 24 S. E. 2d 233; *State* v. *Fisher*, 123 W. Va. 745, 18 S. E. 2d 649.

A prosecuting attorney may prosecute vigorously, so long as he deals fairly with an accused, but he should never assume the role of a partisan eager to convict. It is an abuse of his position to make statements, in his argument, of fact outside the evidence or not fairly inferable from the evidence, and to do so is error. *State* v. *Moose*, 110 W. Va. 476, 158 S. E. 715. Personal abuse by a prosecuting attorney of the defendant or witnesses during the examination of witnesses or in the argument before the jury, if calculated to prejudice the jury and inflame the passions of the jurors, is reversible error. *State* v. *Graham*, 119 W. Va. 85, 191 S. E. 884. When, however, the

statements of a prosecuting attorney are based upon the evidence or his utterances present inferences or conclusions fairly deducible from facts in evidence, or his remarks are provoked by the remarks of counsel for the defendant, his statements are not objectionable or improper. Every remark of a prosecuting attorney is not prejudicially erroneous, and convictions in criminal cases should not be reversed because his remarks may not be entirely justified. A prosecuting attorney is permitted to argue on inferences and to present them with zeal and vigor without undue restriction. See *State* v. *Simon,* 132 W. Va. 322, 52 S. E. 725; *State* v. *Greater Huntington Theatre Corporation,* 133 W. Va. 252, 55 S. E. 2d 681; *Edens v. Commonwealth,* 142 Va. 609, 128 S. E. 555. In *Seay* v. *Commonwealth,* 135 Va. 737, 115 S. E. 574, the remark of a prosecutor that the offense committed by the accused was the most flagrant that he had seen during a specified period of time was held not to constitute reversible error. In *State* v. *Simon,* 132 W. Va. 322, 52 S. E. 2d 725, this Court said: "The holdings of this Court which stress that a prosecuting attorney should be fair, are not, we believe, meant to discourage zeal and vigor in the prosecution of persons charged with crime. *State* v. *Hively,* 103 W. Va. 237, 136 S. E. 862. And on this point the discretionary rulings of the trial court will not be interfered with unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom."

Though the remarks of the prosecuting attorney and his inferences and conclusions from the facts introduced in evidence during the trial may be characterized as intemperate and exaggerated, under the evidence in this case, which points overwhelmingly to the guilt of the defendant, it can not be said that the rights of the defendant have been prejudiced or that manifest injustice has resulted from any statement or remark made by him during the trial of this case, or that the defendant would have been acquitted by any impartial jury if the remarks complained of had not been made. In consequence the judgment of the trial court will not be reversed by this

Court because of the remarks of the prosecuting attorney of which the defendant complains. "The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Point 3, Syllabus, *State* v. *Boggs,* 103 W. Va. 641, 138 S. E. 321; *State* v. *Simon,* 132 W. Va. 322, 52 S. E. 2d 725; *State* v. *Reppert,* 132 W. Va. 675, 52 S. E. 2d 820; *State* v. *Allen,* 45 W. Va. 65, 30 S. E. 209.

The defendant was fairly tried and justly convicted, and the judgment of the Common Pleas Court of Cabell County, being free from prejudicial error, is affirmed.

*Affirmed.*